MESTRE ET AL., DEMANDANTES Y APELANTES, *v.* MICHELENA ET AL., DEMANDADOS Y APELADOS.

APELACIÓN procedente de la Corte de Distrito de Mayagüez en pleito sobre nulidad y reivindicación.

No. 2351.—Resuelto en marzo 7, 1922.

NULIDAD DE PROCEDIMIENTO EJECUTIVO HIPOTECARIO — *Res Adjudicata* — *Estoppel.*—Pendiente un procedimiento sumario hipotecario, los allí demandados establecieron una acción sobre nulidad, principalmente del crédito hipotecario, y en la súplica de la demanda pidieron, entre otras cosas, la nulidad del procedimiento ejecutivo hipotecario. *Se resolvió:* que una nueva acción por los deudores hipotecarios sobre nulidad de dicho procedimiento ejecutivo, siendo un pleito entre las mismas partes o sus causahabientes, está impedida si no por la regla concreta de *res adjudicata,* cuando menos por la regla general de *estoppel.*

PROCEDIMIENTO EJECUTIVO HIPOTECARIO—REQUERIMIENTO DE PAGO AL DEUDOR HIPOTECARIO.—Para que el requerimiento de pago a un deudor hipotecario pueda hacerse a la persona que se halle al frente de la finca, de acuerdo con el artículo 171 del Reglamento Hipotecario, es suficiente con que el dueño no resida en el término municipal donde aquélla radica, sin que para poder hacerlo así sea necesario que se desconozca la residencia del dueño.

ID.—PRESCRIPCIÓN DE CONTRATOS ANULABLES.—Si no es nula una adjudicación hecha en procedimiento ejecutivo hipotecario, aun cuando sea anulable, es un contrato y la acción para pedir la nulidad del mismo prescribe a los cuatro años de acuerdo con el artículo 1268 del Código Civil.

ID.—PRESCRIPCIÓN ENTRE AUSENTES.—La ausencia a que se refiere el artículo 1859 del Código Civil con referencia a los distintos términos de posesión para poder adquirir el dominio por prescripción, no es la del poseedor sino la del dueño.

TERCERO.—Los hechos revisados demuestran la condición de tercero en el demandado principal.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. M. A. Martínez, L. Llorens y A. Arroyo.*

Abogado de los apelados: *Sr. L. Muñoz Morales.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

I. La Corte de Distrito de Mayagüez se pronunció en favor de los demandados por el fundamento, entre otros, de la cosa juzgada. Esta alegación es una forma de impedimento (*estoppel*) y creemos que los demandantes están impedidos por razón de sus pleitos y actos anteriores considerados en conjunto, sea o no la defensa de *res adjudicata* técnicamente aplicable, o si dicha defensa es aplicable a todas las nulidades que ahora solicitan los demandantes en este pleito. Resumamos los hechos.

La causante de los demandados, Nicolasa Bellvé, siguió un procedimiento de acuerdo con los trámites sumarios de la Ley Hipotecaria contra la Sucesión de Mestre y Mora en cobro de cierto crédito hipotecario. Si los demandados fueron o no debidamente notificados de este procedimiento es otra cuestión, pero el hecho es que mientras se encontraba pendiente este procedimiento sumario, la referida sucesión estableció una acción contra Nicolasa Bellvé y otros. Aunque el objeto principal de la anterior demanda era impugnar el crédito hipotecario y no el procedimiento ejecutivo mismo, una de las súplicas de dicha demanda era, sin embargo, la nulidad del procedimiento ejecutivo hipotecario. El fundamento principal del presente litigio es en substancia la falta de jurisdicción de la corte inferior en el procedimiento hipotecario, toda vez que los entonces demandados no fueron notificados debidamente. Es cierto que en esta subdivisión de la discusión los apelantes no emplean la palabra *jurisdicción,* pero la mencionan insistentemente al tratar ellos de demostrar que el procedimiento hipotecario era nulo.

El hecho fué que esta cuestión de jurisdicción, o estaba necesariamente envuelta en la primitiva acción de nulidad, o los demandados por sus actos estaban impedidos de poder levantarla. En aquel entonces los demandantes tuvieron cla-

ramente la oportunidad de poder atacar el procedimiento hipotecario. No podemos convenir con la manifestación que hacen los apelantes de que no podían impugnar el procedimiento hipotecario porque aún no había terminado. Esto podría ser así en cuanto a algunas de las otras causas de nulidad, pero no respecto a la causa principal. Cuando se solicita la nulidad de un procedimiento legal, la parte puede alegar a su favor cualquier cosa que pueda hacer nulo el procedimiento y debe ser levantada. *Ninlliat* v. *Surinach*, 27 D. P. R. 74, y casos. Si una corte en un procedimiento hipotecario en realidad carece en absoluto de jurisdicción, esa cuestión puede ser promovida directamente o atacada colateralmente solicitándose la nulidad. Los apelantes sostienen en su alegato que uno de los medios para poder apreciar la pertinencia de la alegación de cosa juzgada, es si la prueba presentada o que ha de presentarse en los dos pleitos es la misma; pero la prueba de que la notificación fué nula estaba al alcance de los demandantes en su acción original y hubiera anulado el procedimiento hipotecario siempre que hubiera habido una causa de nulidad. Esta es la misma prueba en que ahora los apelantes descansan principalmente. Los apelantes también dicen que un medio de probar la cosa juzgada es comparar los resultados prácticos de los pleitos. Indiscutiblemente que el resultado práctico del primer pleito hubiera sido anular los créditos hipotecarios, pero también hubiera paralizado o anulado el pleito y esto hubiera sido así lo mismo levantándose o no la cuestión de jurisdicción, y ese es precisamente el resultado en que ahora tienen los apelantes puestas sus miras. Los apelantes nos piden que adoptemos la doctrina de Louisiana respecto a la cosa juzgada más bien que la de la Ley Común, pero aún en Luisiana entendemos que una cuestión de jurisdicción como ésta y que fué promovida en una de las súplicas se consideraría como envuelta en el pleito. El caso cae dentro de las prescripciones de los

artículos 1219 del Código Civil, y 59, 61 y 101, párrafo 6, de la Ley de Evidencia.

II. Creemos además que al establecer los demandantes la primitiva acción admitieron prácticamente que fueron notificados del primitivo procedimiento hipotecario. Discutiremos luego la alegada insuficiencia de la notificación o requerimiento. La objeción principal fué y es que dicho requerimiento se notificó a una persona que no tenía la debida relación legal con los demandados. Sin embargo, en el pleito anterior de nulidad reconocieron ellos la existencia del procedimiento hipotecario y no levantaron la cuestión de jurisdicción. De modo que permitieron tácitamente que dicha Nicolasa Bellvé creyera que ellos no atacaban la jurisdicción de la corte para seguir adelante el procedimiento hipotecario y con la existencia del pleito anterior y su terminación en favor de Nicolasa Bellvé surgió un verdadero impedimento en favor de los subsiguientes compradores, sin tenerse en cuenta los elementos de tiempo o de la Ley Hipotecaria. Esta alegación de impedimento (*estoppel*), creemos que puede servirle a los demandados por razón de los hechos alegados en su contestación. Esto resolvería la principal causa de nulidad, pero hay otras consideraciones.

III. El requerimiento del cual se quejan los demandantes, se hizo como consta del diligenciamiento alegado, a saber:

"En nueve de octubre de mil ochocientos noventa y siete, siendo las tres de la tarde, se constituyó el alguacil don Andrés Avelino Lugo, con el Proc. Rossy y conmigo el actuario en el barrio de Benavente, del término municipal de Hormigueros, partido judicial de San Germán, y en la Hacienda 'Acacia' al objeto de practicar el requerimiento dispuesto: Requerido un vecino para que manifieste quién está encargado de la finca se informó que lo está don Silverio Cabassa. Llamado que fué, pues no se hallaba en la finca, se presentó como a los diez minutos de ello y entonces el susodicho alguacil procedió a requerirlo en concepto de encargado por no encontrarse la finca en explotación a fin de que haga llegar a conocimiento de

los dueños que por orden del Juzgado de San Germán se les requiere para que dentro del término de treinta días satisfagan a doña Nicolasa Bellvé y Márquez la cantidad de siete mil quinientos cincuenta pesos, con los intereses legales que son en deberle por el crédito hipotecario de ocho mil cuatrocientos pesos garantizado con hipoteca de esta finca según aparece de escritura de 10 de enero de 1890 apercibido de que se subastará la finca en cuestión si no verifican el pago en el término dicho. En este estado yo el actuario, procedí a notificar al citado Silverio Cabassa el auto que antecede dándole copia literal y leyéndoselo íntegramente, asimismo le hago entrega de todas las copias acompañadas con encargo de que dentro del más breve tiempo posible las haga llegar a manos de los dueños y no habiendo otro particular el alguacil dió por conclusas las diligencias que firmaron todos excepto 'el encargado requerido que expuso no saber, por lo que lo hace a su ruego don Mateo Fajardo, vecino, digo que se encuentra accidentalmente en este lugar, doy fe.—(f) Andrés A. Lugo.—Mateo Fajardo.—José Ml. Rossy.—✕✕.''

Los apelados sostienen que las objeciones de los demandantes al requerimiento como aparece del diligenciamiento, afectan a la veracidad o falsedad del diligenciamiento y no a su suficiencia según aparece de su faz. Insisten los apelantes que el requerimiento es nulo por su faz. La cuestión litigiosa así promovida envuelve la interpretación del artículo 171 del Reglamento Hipotecario, el cual prescribe lo siguiente:

"Art. 171.—Cuando todos los bienes hipotecados estén en manos de un sólo poseedor, según la certificación del registro, el requerimiento de pago se entenderá con él en su domicilio si reside en el término municipal donde radique alguno de dichos bienes. Esto mismo se practicará respecto de cada cual de los poseedores de los distintos bienes, cuando fueren varios. Cuando alguno de los que hayan de ser requeridos de pago no residiere en término municipal donde radique alguno de los bienes, el requerimiento se entenderá con la persona que se halle al frente de la finca en cualquier concepto legal, a fin de que lo ponga sin dilación en conocimiento del dueño. Si la finca estuviese abandonada, de modo que nadie la tenga a su cargo, el requerimiento se entenderá con la autoridad municipal administrativa del pueblo, con igual encargo de comunicarlo al deudor, etc.''

Y éste, en relación con el último párrafo del artículo 176, que prescribe lo siguiente:

"Las disposiciones de la Ley de Enjuiciamiento Civil vigentes en Cuba, Puerto Rico y Filipinas, serán aplicables a estos procedimientos como supletorias, en cuanto no se opongan a lo prescrito en la hipotecaria y en el presente reglamento."

Durante la vista los apelantes llamaron la atención de este tribunal el caso de *Arvelo* v. *Banco Territorial y Agrícola*, 25 D. P. R. 728. En este caso, este tribunal, aunque la cuestión no estaba necesariamente envuelta, aparece diciendo que una notificación hecha a una persona encargada de una finca sólo debe hacerse si el dueño no reside en la propiedad y cuando no se conoce su residencia. Es bastante con decir que el artículo 171 de la Ley Hipotecaria no exige estas dos condiciones, sino que expresa simplemente que si el dueño no reside en la propiedad, etc.

La petición en el procedimiento sumario alegaba que los deudores vivían en Mayagüez. Aunque podría ser mejor práctica para un acreedor notificar a los deudores personalmente cuando se conoce su residencia, sin embargo, la idea de la Ley Hipotecaria, artículo 171, es evidentemente, que es suficiente con que se notifique a la persona al frente de la propiedad, y haciéndose esta aseveración bajo la responsabilidad del acreedor y por el momento tenida por cierta, la única alternativa para el funcionario que cumple con el requerimiento es entregarlo a la persona que está a cargo de la propiedad.

Los apelantes insisten en que de acuerdo con el artículo 176 del Reglamento Hipotecario era necesario que el acreedor primero se cerciorara bien de que los deudores no vivían en la propiedad, practicando cierta investigación en Cabo Rojo y Hormigueros, donde la propiedad se hallaba radicada para determinar si realmente estaban o no allí los deudores.

Creemos que el artículo 171 habla por sí mismo y no hay nada supletorio que sea necesario.

Surge entonces la cuestión siguiente: ¿Aparecía del diligenciamiento hecho por el funcionario, que el requerimiento se hizo a la persona que estaba a cargo de la finca? No hemos dejado de tener algunas dudas de si no debió haber aparecido del diligenciamiento la capacidad legal en que se encontraba Silverio Cabassa a cargo de la finca. Pero apreciadas todas las circunstancias estamos convencidos que el decir que una persona está a cargo de una propiedad, es decir que está allí en cierta capacidad legal, especialmente por mostrar el diligenciamiento que Silverio Cabassa no solamente fué notificado, sino que aceptó la notificación en la que se le exigía que notificara a los deudores.

Por la faz del diligenciamiento, Silverio Cabassa era la persona que estaba al frente de la propiedad y de su posesión había de presumirse una relación legal con el dueño. Tal relación legal surgiría si Silverio Cabassa era un mero tenedor en precario, un mayordomo, o como la prueba de los demandantes tendía a mostrar, una persona a quien solamente permitían los verdaderos dueños cultivar una parte de la finca. Con respecto a la prueba tendente a acreditar que uno de los dueños estuvo siempre en la finca, podemos decir que dada la residencia legal de los mismos en Mayagüez, como aparece de los autos, la prueba para anular el diligenciamiento tendría que demostrar claramente que uno de dichos dueños vivía en la propiedad cuando la notificación se hizo a Cabassa. Asimismo, si como dicen los apelantes, el requerimiento es semejante al emplazamiento en un pleito ordinario, entonces sus defectos podían quedar subsanados probándose que realmente se hizo la notificación a los deudores como se indica en los autos al discutirse la excepción de cosa juzgada.

En el juicio los apelantes trataron de demostrar la falsedad del diligenciamiento, entre otros medios, probando que

los deudores realmente vivían en la propiedad.   La prueba presentada no convenció a la corte inferior y no nos convence de que los apelantes tuvieran alguna residencia legal que no fuera en Mayagüez, aunque puede ser cierto que uno u otro de ellos en ocasiones vivían en la finca.   Si una persona, por ejemplo, es dueña de tres o cuatro fincas en diferentes jurisdicciones y a veces vive en cada una de ellas, pero tiene su residencia legal en una de las mismas, y si también tiene una hipoteca en cada una de las mismas, tal persona, sin embargo, sólo tiene una residencia legal, y el artículo 171 de la Ley Hipotecaria permitiría que se hiciera una notificación a la persona encargada de cualquiera de las otras tres o cuatro propiedades.   La Ley Hipotecaria tiene por fin la notificación al dueño de la propiedad si vive en la jurisdicción, o si no, a la persona que se encuentra en la finca en cierta capacidad legal.

IV.   En el presente pleito se alegan otras varias nulidades, a saber: 1. Que la tasación de la finca no fué hecha válidamente.   2. Que los peritos no fueron debidamente nombrados.   3. Que la tercera subasta no se llevó a cabo válidamente.   4. Que el acta de adjudicación no contenía todas las diligencias necesarias.

Los apelados, con bastante apariencia de razón, sostienen que estas nulidades en realidad no existen y que los artículos de la Ley Hipotecaria en que se fundan los apelantes no son de aplicación, sino otros artículos o consideraciones. Estas supuestas nulidades no quedarían comprendidas en la alegación de *res adjudicata* toda vez que los defectos u omisiones referidos surgieron después de ser establecido el primer pleito, o sea, en cierto día del año 1899.   No discutiremos las alegadas nulidades en sus pormenores porque somos de opinión de que la acción para impugnar estas nulidades en particular ha prescrito.   Convenimos con los apelantes en que si el Juzgado de Primera Instancia de San Germán no adquirió jurisdicción sobre las personas de los deudores por

virtud de la notificación hecha a Silverio Cabassa que todo el procedimiento era nulo y sin valor *ab-initio* y que no podía surgir ninguna adjudicación válida o sentencia, pero como sostenemos que el Juzgado de San Germán efectivamente adquirió jurisdicción sobre los deudores, creemos que es aplicable el artículo 1268. La venta que tiene lugar en un procedimiento hipotecario o es un acto del deudor, o de la autoridad superior del Estado. La adjudicación o escritura que se hace al venderse la propiedad es un contrato ya entre el primitivo deudor y el comprador, o entre el Estado y el comprador. Teniendo la corte jurisdicción sobre la materia objeto de la acción y sobre las partes, cualquier defecto en el otorgamiento del contrato lo haría anulable, pero no absolutamente nulo. Hubo una sentencia en adjudicación y por consiguiente el artículo 1268 era aplicable puesto que la presente acción de nulidad no fué establecida dentro de los cuatro años.

V. Los apelados también sostienen que la venta judicial quedó convalidada por los actos subsiguientes de los deudores. Nos inclinamos a convenir con los apelantes en que si el Juzgado de San Germán no adquirió jurisdicción sobre los deudores, la venta hecha fué enteramente nula y que una cosa que es completamente nula no puede ser convalidada por actos subsiguientes aunque pueden concebirse situaciones especiales como aquellas de que trata el caso de *Carrasquillo v. Beltrán,* 29 D. P. R. 961. Pero como sostenemos que la corte tuvo jurisdicción, la convalidación podía tener lugar. La propiedad fué adjudicada a Nicolasa Bellvé en febrero, 1901, y esta propiedad se vendió al Sr. Lange en 23 de diciembre del mismo año. En abril 1, 1904, la misma sucesión de Salvador Mestre y Mora vendió a dicho Lange la parte de "Acacia" que no estaba incluída en el procedimiento hipotecario, y en la escritura se describía en detalle el procedimiento hipotecario y entonces los deudores conocían el resul-

tado de los pleitos anteriores y las supuestas causas de nulidad.

VI. Más o menos independientemente de la anterior discusión convenimos con los apelados en que Santiago Michelena, que es uno de los apelados en este caso, era tercero de acuerdo con la Ley Hipotecaria: Nicolasa Bellvé vendió a Lange. Lange a Michelena. El acta o escritura de adjudicación a Nicolasa Bellvé fué debidamente inscrita en el registro de la propiedad y en esa escritura sólo se hacían constar el debido proceso de la corte y el hecho de la adjudicación. El requerimiento tan discutido no fué transcrito. Ahora bien, aunque era posible para los apelantes impugnar la jurisdicción del Juzgado de San Germán, sin embargo, la falta de jurisdicción de ese juzgado no aparecía del registro. Somos claramente de opinión de que cuando del registro aparece una venta judicial hecha por una corte de record, el comprador no está obligado a indagar fuera del registro. *El Pueblo* v. *Riera,* 27 D. P. R. 1; *Sánchez* v. *Hartzell et al.,* 26 D. P. R. 684; *Ayllon y Ojeda* v. *González y Fernández,* 28 D. P. R. 67. Los supuestos defectos no constaban claramente del registro como exige el artículo 34 de la Ley Hipotecaria.

Pero aún cuando esto no fuese así y hubiera algo en el registro que obligara a un comprador a examinar el diligenciamiento hecho por el funcionario en el requerimiento original, nada había allí que le privara de su carácter de tercero, especialmente si había visto el pleito iniciado anteriormente por los apelantes en el año 1899.

VII. La prescripción adquisitiva correría en favor del apelado Michelena. Algunas de las anteriores consideraciones son aplicables a las cuestiones corrientes de buena fe y justo título, pero los apelantes también dicen que el período de prescripción no podía correr en favor de Michelena por residir él fuera de la Isla. Convenimos con los apelados en que las disposiciones del artículo 1859 del Código Civil que establecen una excepción en favor de las personas ausentes

es una excepción en favor de los primitivos dueños.   En otras palabras, si una persona que ha sido privada por otra de su propiedad se encuentra fuera de la Isla, el período de prescripción es veinte años; pero si es la persona que posee adversamente la que se encuentra fuera, su ausencia no beneficiará al verdadero dueño, porque estando presente en el lugar el verdadero dueño siempre puede iniciar su acción y obtener el emplazamiento directamente, o mediante edictos contra el demandado.   De acuerdo con el Código Civil la posesión legal de Michelena comenzó por la escritura hecha a su favor por Lange en el año 1901, y asimismo podía él contar la posesión de sus causantes.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro, y Asociados Aldrey y Hutchison.