ANTONIO ROMÁN BENÍTEZ y RAMONA DÁVILA DE ROMÁN, deman-
dantes-apelantes-apelados, *v.* FRANCISCA RIVERA GÓMEZ,
RAFAEL RIVERA OYOLA, LORENZO ALOIS BENNAZAR y MER-
CEDES PONT ZAYAS, demandados-apelados-apelantes.

No. 5680.—*Sometido:* Abril 27, 1932. *Resuelto:* Mayo 26, 1932.

536

*R. H. Blondet,* abogado del apelante-apelado; *Juan de Guzmán Benítez,* abogado de los apelados-apelantes.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Antonio Román Benítez y su esposa Ramona Dávila constituyeron, en 28 de octubre de 1921, hipoteca sobre una finca de su propiedad a favor de Francisco Rivera Colón, para garantizar un préstamo de $8,000 por un plazo de dos años que vencería el día 28 de octubre de 1923. Se fijó un interés del 12 por ciento anual hasta que el préstamo fuese sa-

tisfecho y se fijaron $800 para costas y honorarios de abogado.

En 16 de enero de 1923, Francisco Rivera instituyó procedimiento ejecutivo contra Antonio Román Benítez para hacer efectivo su crédito hipotecario con las costas y mensualidades vencidas. Se libró orden de requerimiento contra el deudor hipotecario y en el diligenciamiento del márshal éste hace constar que no estando presente el Sr. Antonio Román Benítez en su residencia, por conducto de su hermana Srta. María Román, residente en la misma casa y mediante entrega personal hecha de las copias del requerimiento y de las demás diligencias unidas al caso por el demandante, requirió al demandado Antonio Román Benítez, para el pago de la deuda con sus intereses, costas y mensualidades vencidas. Francisco Rivera Colón falleció en 21 de mayo de 1926, instituyendo como única heredera a la demandada Francisca Rivera Gómez. La finca objeto de este litigio fué hipotecada por Francisca Rivera Gómez y su esposo Rafael Rivera Oyola a favor de Lorenzo Alois Bennazar y su esposa Mercedes Pont Zayas por la suma de $5,000.

Los demandantes Antonio Román Benítez y su esposa solicitan la nulidad del procedimiento ejecutivo seguido por el causante de la demandada basándose en que este procedimiento está viciado de nulidad porque el demandado nunca fué requerido en forma legal y pidiendo la restitución de la propiedad y que se condene a los demandados a satisfacerles la suma de $156 mensuales producidos o debidos producir por la finca desde la fecha en que fueron ilegalmente privados de la posesión de la misma hasta que ésta les sea restituída.

Los demandados, además de su contestación oponiéndose a la demanda, radicaron una contrademanda, solicitando, para en caso de que prosperase la demanda, la devolución del préstamo hipotecario de $8,000, con sus intereses hasta el día de pago, gastos de contribuciones, agua del acueducto, reparaciones importantes y compensación por cualquier am-

pliación y reconstrucción que el demandado y contrademandante, Rafael Rivera Oyola, haya hecho en cualesquiera de las casas de la finca.

La corte inferior dictó sentencia declarando con lugar la demanda y condenando a los demandados a restituir a los demandantes la finca en litigio, con sus frutos producidos o debidos producir, que se estiman a razón de $60 mensuales, desde que los demandantes fueron privados de la posesión de la finca, o sea desde el 4 de abril de 1923, hasta que la misma sea restituída a los demandantes, siendo entendido que dicha finca deberá ser restituída liberada de la hipoteca por $5,000 constituída por los demandados a favor de Lorenzo Alois, o en su defecto pagarán los demandados a los demandantes la cantidad de $5,000 importe de dicha hipoteca, más los intereses que se adeuden a la fecha de la restitución.

También declaró la corte con lugar la contrademandà, condenando a los demandantes, como condición precedente a la restitución de la finca, a pagar a la demandada Francisca Rivera Gómez la cantidad de $8,000, importe del capital del préstamo hipotecario, intereses sobre dicha suma a razón del 12 por ciento anual desde el 29 de marzo de 1922 hasta el día del pago. Condena además la corte a los demandantes a pagar a la demandada la cantidad de $1,200.77 pagados por la demandada por concepto de contribuciones desde el año 1923 al 1929, y $269.72 pagados por dicha demandada por concepto de agua consumida en la finca, más $255.83 pagados por la demandada por prima de la póliza de seguro contra incendio sobre la finca en cuestión. Y por último se condena a los demandantes a pagar al demandado Rafael Rivera Oyola la cantidad de $2,021.40, importe de la mejora que hizo sobre uno de los ranchones de la finca.

En este caso ambas partes apelaron de la sentencia de la corte inferior. Los demandados y contrademandantes señalaron cinco errores que examinaremos por su orden.

■ En primer lugar se alega que la corte erró al deses-

timar la defensa especial de los demandados de que la acción estaba prescrita con arreglo a los artículos 1868, inciso segundo, y 1802 y 1803 del Código Civil, edición 1930. No estamos de acuerdo con el abogado de los demandados. No ejercitan los demandantes una acción subsidiaria de daños y perjuicios. Se pide la nulidad del procedimiento ejecutivo incoado por el causante de la demandada Francisca Rivera Gómez y se solicita la restitución de la finca, con los frutos producidos o debidos producir. La acción fundamental ejercitada por los demandantes es una acción reivindicatoria, basada en la nulidad o inexistencia del título de la demandada.

Esta Corte Suprema, en el caso de *Carmona* v. *Cuesta,* 20 D.P.R. 229, establece la diferencia que existe entre la acción principal de daños y perjuicios derivados de culpa y negligencia, y la acción subsidiaria en el caso de que no pueda prosperar la acción reivindicatoria. Según el artículo 354 del Código Civil el propietario tiene acción contra el tenedor y el poseedor de la cosa para reivindicarla.

El demandante, Román Benítez, está ejercitando en este caso el derecho que le reconoce la ley para reivindicar la finca de cuya propiedad fué privado. En la demanda se alega que el demandado Román Benítez en el procedimiento ejecutivo nunca fué requerido legalmente y que por lo tanto este procedimiento está viciado de nulidad. No cometió error, por lo tanto, la corte inferior al declarar sin lugar la defensa especial de prescripción establecida por los demandados.

■ El segundo y el tercer error se basan en no haber declarado la corte con lugar la excepción previa de falta de causa de acción y en haber decretado la nulidad del procedimiento ejecutivo basándose en que el demandado en dicho procedimiento, Antonio Román Benítez, no fué legalmente requerido. La nulidad del procedimiento surge claramente del diligenciamiento del márshal, quien se constituyó en la residencia de Antonio Román Benítez y no estando presente

el demandado lo requirió por conducto de su hermana, Srta. María Román, a quien hizo entrega personal de las copias del requerimiento y de las demás diligencias unidas al caso por el demandante.

Con respecto al domicilio y residencia de Antonio Román Benítez la corte inferior se expresa en los siguientes términos:

"De acuerdo con la prueba practicada en este caso, aparece que la residencia habitual y permanente del demandante era en la Calle Loíza de Santurce. Que teniendo un hijo enfermo, allá por el mes de enero de 1923 llevó su familia a Yabucoa, pero él venía semanalmente a su residencia de la calle de Loíza y tenía obras en Santurce, y en marzo del mismo año regresó con su familia a su residencia de Santurce. Del 'return' del Márshal aparece claramente que el requerimiento de pago es completamente nulo, pues del mismo aparece que el día 2 de febrero de 1923, el márshal se trasladó a la residencia del demandado y no estando presente el Sr. Antonio Román Benítez, requirió a dicho demandado por conducto de su hermana, Srta. María Román; pero no aparece que la Srta. Román estuviese al frente de la finca en cualquier concepto legal como dispone el Art. 171 del Reglamento para la Ejecución de la Ley hipotecaria y la única relación existente entre María Román y Antonio Román Benítez es la de hermanos."

De acuerdo con el inciso 2 del artículo 128 de la Ley Hipotecaria, se requerirá al deudor de pago si residiere en el lugar en que radica la finca y si se supiere su domicilio; bastará en otro caso que se requiera al que se halle al frente de la finca en cualquier concepto legal a fin de que ponga en conocimiento del dueño la reclamación. La Ley Hipotecaria tiene por fin la notificación al dueño de la propiedad si vive en la jurisdicción, o si no a la persona que se encuentre en la finca en cierta capacidad legal. *Mestre* v. *Michelena*, 30 D.P.R. 155.

De acuerdo con el artículo 103 del Reglamento para la ejecución de la ley hipotecaria española, el requerimiento de pago se hará al deudor o al tercer poseedor de los bienes hipotecados, en la forma ordinaria, con intervención de notario,

o bien por mandato judicial, cualquiera que sea la cuantía de los bienes hipotecados.

Comentando este artículo del Reglamento dice Galindo y Escosura en el tomo tercero, página 295, de sus Comentarios a la Ley Hipotecaria:

"Si el deudor no se encontrare en su casa, el requerimiento del notario no se tendrá por hecho: entendemos que se necesita que sea personal. Si hubiera de hacerse por Escribano, se seguirán las reglas que para las notificaciones establece la sección 3ª, título 6º, libro 1º, de la Ley de Enjuiciamiento Civil. El art. 275 de la Ley de Enjuiciamiento Civil Española dice que los requerimientos se harán notificando al requerido en la forma prevenida, la providencia en que se mande, expresando el actuario en la diligencia haberle hecho el requerimiento en aquélla ordenado."

En el presente caso el deudor hipotecario residía en el lugar donde radicaba el inmueble, y únicamente se ausentó por algunos días. El requerimiento debió entenderse con él en su domicilio de acuerdo con el artículo 171 del Reglamento de la Ley Hipotecaria. Este requerimiento debe ser personal, y por lo tanto entendemos que, no habiendo sido Antonio Román Benítez requerido personalmente, todo el procedimiento ejecutivo hipotecario está viciado de nulidad por no haber la corte adquirido jurisdicción en el mismo.

█ El cuarto error que se atribuye a la corte consiste en haberse basado ésta en la declaración del testigo Ramón Contrera Puig para condenar a los demandados a pagar $60 mensuales a los demandantes como frutos de la finca.

Sobre esta apreciación ambas partes atribuyen error a la corte inferior, y ambas están equivocadas. Dice la parte demandada que la corte dió crédito a la manifestación hecha al márshal por uno de los inquilinos de la finca. La parte demandante, por el contrario, dice que la corte inferior no tuvo en cuenta las cantidades consignadas en el diligenciamiento del márshal, al fijar la cuantía de las rentas. La verdad es que la corte no basó su conclusión en lo que el márshal

---

[1] Sobre la cuestión discutida bajo este número véanse las páginas 543 y 547.

hiciera·constar en el certificado de diligenciamiento. Lo que el márshal entonces consignara, a espaldas del demandado en el procedimiento ejecutivo, no puede constituir prueba en este juicio. La corte *a quo* no ha podido basarse en lo que un inquilino dijera al márshal, porque de los autos no aparece que dicho funcionario recibiera su información de los inquilinos de la finca. La corte se basó en el testimonio de Ramón Contrera Puig, quien declaró bajo juramento en el juicio que los ranchones que él vivía rentaban $30 cada uno. Esta es la única prueba producida sobre las rentas de los ranchones y a ella dió crédito la corte inferior, sin que incurriera en el error que le atribuyen los litigantes en este caso.

Alega por último la demandada que la corte cometió error en la parte en que declaró con lugar la demanda y condenó a los demandados a restituir a los demandantes la finca a que se refiere la demanda con sus frutos producidos o debidos producir, o sea $60 mensuales desde el 4 de abril de 1923, en que fueron privados de la posesión, hasta que se haga la restitución de la finca. El abogado de la demandada no ofrece ningún argumento en apoyo de su contención. No creemos nosotros que la corte *a quo* cometiera error al fijar la suma de $60 mensuales, porque esta conclusión se deriva de la prueba practicada; pero sí opinamos que no ha debido condenarse a los demandados a pagar esta suma desde la fecha mencionada hasta el día en que la finca sea restituída a los demandantes. Según el artículo 371 de nuestro Código Civil, edición 1930, el que sucede por título hereditario no sufrirá las consecuencias de una posesión viciosa de su causante, si no se demuestra que tenía conocimiento de los vicios que la afectaban; pero los efectos de la posesión de buena fe no le aprovecharán sino desde la fecha de la muerte del causante. No se ha aportado prueba alguna para demostrar que la heredera Francisca Rivera Gómez tuviese conocimiento de los vicios que afectaban su título. No puede discutírsele, por lo tanto, su posesión de buena fe desde la fecha en que

ocurrió la muerte de su causante. Francisco Rivera Colón falleció en 21 de mayo de 1926. Desde esta fecha hasta el momento en que fué notificada de la demanda, la demandada Francisca Rivera Gómez es poseedora de buena fe y no puede condenársele a satisfacer los frutos civiles durante el período en que quedó amparada por la buena fe de su posesión; esta buena fe cesó en el momento en que los demandados fueron notificados de la demanda donde se consignan los vicios del título en virtud del cual poseen.

Ocho son los errores señalados por los demandantes y contrademandados. En el primero se alega que la corte de distrito erró al estimar los frutos producidos o debidos producir en $60 mensuales y que fué parcial en ello, pues el montante de los frutos producidos o debidos producir fué probado con el propio diligenciamiento del márshal, efectuado al requerir a los inquilinos que vivían en las casas del demandante en la fecha en que el demandado embargó las rentas para apropiarse como se apropió de las mismas. Declaramos sin lugar este error basados en los mismos argumentos que utilizamos para declarar sin lugar el cuarto error señalado por los demandados y contrademandantes. Los demandados alegan además que el testigo Ramón Contrera Puig declaró sobre un número de solares que había en la finca, añadiendo que había individuos que trataban de alquilarlos a Román Benítez. Este mismo testigo dice que no vió que se arrendara ningún solar.

El testigo del demandante José López declara que la finca de Román Benítez no estaba preparada para ponerla en solares, ni entonces ni hoy.

El testigo de la demandada, Juan A. Román, declara que Román Benítez tuvo el propósito de urbanizar la finca, pero no llegó a hacerlo, que no había solares abiertos y que no sabe de ninguna persona que ofreciera comprar algún solar. Melitón Verdejo, también testigo de la demandada, declara que el terreno ha tenido tres solares y lo demás no se ha

usado casi nunca porque es pantanoso; que el mismo Román
Benítez nunca afirmó el terreno, el cual necesita ser rellenado
para fabricar en él. Juan B. Aranda declara que no había
solares para edificar y que nunca se urbanizó la finca. Con
esta prueba la corte sentenciadora no pudo fijar suma alguna
por la renta de estos solares en una finca que no fué urba-
nizada, y donde los mencionados solares no estaban prepara-
dos para fabricar.

Se declaró en el juicio que había tres ranchones en la finca.
El testigo de la demandada, Juan A. Román, nos dice que el
ranchón del medio estaba casi caído con la mitad al aire, que
había que tumbar la otra parte, que dicho ranchón estuvo
como dos o tres meses inclinado, hasta que el Sr. Granado,
administrador de Francisco Rivera Colón, lo mandó tumbar.
Melitón Verdejo declara que existen dos ranchones, porque
uno se cayó al saliente al poco tiempo de poseerlo el Sr. Ro-
mán y luego, poco después, cuando vino don Paco se acabó
de caer, y don Paco lo acabó de destruir. Rafael Rivera
Oyola, esposo de la demandada, declara que cuando su esposa
tomó esos ranchones, estaban en regulares condiciones, de-
bido a que habían sido reparados por Francisco Rivera Colón,
o sea por su administrador Granado, y que cuando Francisco
Rivera Colón los compró, se encontraban en muy mal estado.
La corte inferior, basándose en la prueba, declara que uno
de los ranchones estaba en estado ruinoso y hubo que derri-
barlo. Así lo creemos también nosotros, luego de haber exa-
minado cuidadosamente toda la prueba sobre el mencionado
ranchón, pero aun cuando se hubiese demostrado que este
ranchón fué innecesariamente destruído, no existe prueba al-
guna en el récord de las rentas que producía, para que la
corte sentenciadora hubiese podido fijar una suma como fruto
debido producir. Como hemos dicho, la única prueba que
existe es la declaración de Ramón Contrera Puig, cuando
dice que los dos ranchones que él vivía rentaban $30 cada uno.

██ El segundo error señalado por los demandantes se

basa en que la corte consideró a Rafael Rivera Oyola como un tercero que construyó de buena fe en el solar heredado por su esposa. Se ofreció prueba en el juicio, que no ha sido contradicha, para demostrar que el esposo de la demandada construyó una planta alta sobre uno de los ranchones y que el costo de esta obra ascendió a $2,021.40. Se trata de una mejora o gasto útil que debe ser satisfecha por el propietario. Esta construcción se llevó a cabo después de la muerte del causante Francisco Rivera Colón. De acuerdo con el artículo 382 del Código Civil, los gastos útiles se abonan al poseedor de buena fe, pudiendo optar el que lo hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la finca. No se aportó prueba alguna sobre el aumento de valor que en virtud de dicha mejora haya adquirido el ranchón. Cuando se construyó esa obra la demandada Francisca Rivera Gómez y Rafael Rivera Oyola eran poseedores de buena fe, según hemos demostrado al resolver el quinto error señalado por los demandados y contrademandantes. Entendemos que el propietario está obligado a pagar el importe de estos gastos ya que no ofreció prueba alguna sobre el aumento de valor que dicho ranchón haya adquirido para poder elegir entre satisfacer los gastos o abonar el aumento de valor de la cosa.

Tercer error: alegan los demandantes que la Corte de Distrito de San Juan cometió error al permitir que luego de cerrado el caso, se presentara una escritura de constitución de préstamo hipotecario, la cual admitió como prueba, abonando a los demandados intereses, que se probaron como devengados con dicho instrumento público, sin que el demandante tuviera oportunidad para hacer las objeciones pertinentes en derecho. Nos ha causado extrañeza el procedimiento seguido por la corte inferior, en primer lugar porque se trata de un hecho suficientemente probado, que no necesitaba evidencia adicional, y en segundo lugar porque no debe

admitirse prueba, después de celebrada la vista, a menos que se haya abierto el caso nuevamente a prueba. La verdad es que los demandantes, en el hecho cuarto de su demanda, alegan que Antonio Román Benítez se obligó a pagar al acreedor hipotecario la suma de $8,000 en el plazo de dos años, devengando hasta que dicha suma sea satisfecha, el interés del 12 por ciento anual, pagadero por meses vencidos, y que este hecho fué aceptado expresamente por la parte demandada, quien además volvió a alegar en su contrademanda el préstamo de $8,000 con el interés del 12 por ciento anual, hasta el pago de la deuda. Los demandantes y contrademandados aceptaron expresamente esta alegación. De las certificaciones del registro de la propiedad aparece el préstamo contraído y el interés del 12 por ciento por mensualidades vencidas, hasta que dicho préstamo fuese satisfecho. No nos explicamos ni la admisión por parte de la corte de la escritura donde aparece constituída la hipoteca, después de visto el caso, ni la actitud de los demandantes haciendo objeción a la admisión de un documento que en nada puede perjudicarles, puesto que los mismos demandantes han admitido que se comprometieron a pagar el interés del 12 por ciento sobre el préstamo de $8,000 hasta que el mismo fuese satisfecho.

■ Ahora bien, este convenio no puede tener el alcance de obligar a los demandantes a pagar los intereses mientras se han visto privados de los frutos del inmueble. La hipoteca se constituyó para garantizar el préstamo de los $8,000. Cuando el acreedor hipotecario se posesionó de la finca, se incautó de la garantía, se apropió esta garantía para sí, y no parece justo que se obligue a los demandantes a pagar intereses a los demandados por una suma que prácticamente han tenido los últimos en su poder, mientras han estado disfrutando de los frutos de la finca. La doctrina de la justa compensación debe prevalecer en el presente caso. Los demandados no pueden tener derecho a percibir los intereses y los frutos a un mismo tiempo. Claro es que este principio debe

aplicarse durante la posesión de buena fe que permite al poseedor percibir los frutos; pero no durante la posesión de mala fe que priva al poseedor de esos frutos.

El cuarto error señalado por los demandantes es idéntico al segundo, puesto que se basa en haber considerado la corte como un tercero al esposo de la demandada Rafael Rivera Oyola.

El quinto error se basa en la conclusión de la corte sobre el estado ruinoso de uno de los ranchones. Ya hemos resuelto este extremo al discutir el primer error.

El sexto error es idéntico al primero, pero alega que la corte erró al estimar como concluyente la declaración de Ramón Cartagena sobre las rentas producidas o debidas producir por los ranchones, estimándolas en $60. Debemos hacer constar que no aparece de los autos que haya declarado ninguna persona con el nombre de Ramón Cartagena. Ramón Contrera Puig fué el único que declaró sobre las rentas de los ranchones. Si estos ranchones rentaban más de $60 mensuales, los demandantes han debido ofrecer prueba al efecto, y no atenerse al certificado del márshal, quien no compareció a declarar, y cuyas manifestaciones a espaldas de los demandados no pueden constituir prueba contra éstos. En ausencia de otra prueba, la corte inferior tomó como base para fijar las rentas la declaración de Ramón Contrera Puig, que es uno de los testigos de los demandantes, y que fué la única prueba que se produjo sobre el montante de las rentas.

El séptimo error es una repetición de los errores segundo, tercero y cuarto.

Se alega por último que la Corte de Distrito de San Juan cometió error al declarar que cada parte debe pagar sus costas. La corte *a quo,* en el ejercicio de su discreción, estimó que no debía conceder costas a ninguna de las partes y nosotros, dada la naturaleza de este litigio, entendemos que debemos aceptar sin modificarla la decisión del tribunal sentenciador.

■ La corte inferior condena a los demandantes a satisfacer a los demandados la cantidad de $269.72 pagados por concepto de agua consumida en la finca. Esta cantidad comprende el agua consumida desde marzo del año 1923 hasta marzo de 1926, y desde esta fecha al mes de agosto de 1930. La buena fe de la posesión de los demandados empieza el día 21 de mayo de 1926, fecha en que murió el causante de la demandada, Francisco Rivera Colón, y termina el día en que fueron notificados de la demanda de nulidad. Los gastos del agua consumida durante este período son de la exclusiva cuenta de los demandados. El que percibe los frutos tiene la obligación de abonar los gastos hechos para su producción, recolección y conservación. No es justo ni equitativo que el poseedor se enriquezca a expensas del propietario, y, si obligáramos a éste, a pagar los gastos de agua, colocaríamos al poseedor en la posición ventajosa de percibir los frutos y además el abono de gastos en que incurriera para su producción.

En cuanto al poseedor de mala fe la situación varía. El artículo 384 de nuestro Código Civil, edición de 1930, equivalente al 455 del Código Español, dice que el poseedor de mala fe abonará los frutos percibidos y los que el poseedor legítimo hubiera podido percibir, y sólo tendrá derecho a ser reintegrado de los gastos necesarios hechos para la conservación de la cosa. Los gastos de producción, recolección y conservación son gastos necesarios, de naturaleza especial, pero no lo son para la conservación de la cosa. ¿Son abonables al poseedor de mala fe estos gastos hechos para producir los frutos que en definitiva percibe el propietario? ¿Es posible armonizar las disposiciones del artículo 290 y 384 de nuestro Código Civil? El artículo 290, edición 1930, equivalente al 356 del Código Civil Español dice que el que percibe los frutos tiene la obligación de abonar los gastos hechos por un tercero para su producción, recolección y conservación, y el artículo 384 sólo otorga al poseedor de mala fe el

derecho al reintegro de los gastos necesarios para la conservación de la cosa poseída. A pesar de la severidad con que el Código castiga al que posee de mala fe, no creemos que deba llevarse esta severidad al extremo de enriquecer al propietario a expensas del poseedor. Dice Sánchez Román en el tomo tercero, página 459 de su obra Derecho Civil:

"Sin embargo de ser terminante el texto del art. 455 en el extremo de que el poseedor de mala fe 'sólo tendrá derecho a ser reintegrado de los gastos *necesarios* hechos para la *conservación* de la cosa', ya porque resultaría excesiva pena para el poseedor, no sólo no percibir fruto alguno, sino soportar los gastos de su producción, recolección, etcétera, y excesivo, también, el beneficio para el dueño o poseedor legítimo a quien se hiciera la adjudicación de frutos sin abono de los gastos que hubiere originado su producción, ya porque es preciso concordar este art. 455 con el 356 que sienta el principio general más justo de que 'el que percibe los frutos tiene la obligación de abonar los gastos hechos por un *tercero* para su producción, recolección y conservación', parece que la solución de justicia podría ser, toda vez que en el 356 no dice más que *tercero,* sin distinguir si tuvo buena o mala fe al suplir dichos gastos, considerar que el art. 455 debe ser entendido en este punto sin perjuicio o bajo el complemento del 356.

"Que eso sería más justo y salvaría tal caprichosa variedad de criterio entre uno y otro artículo, es indudable: pero no pueden perderse de vista lo terminante del texto del 455 y el manifiesto sentido *excluyente* de su frase '*sólo tendrá derecho*' y generalmente el valor de ese adverbio que emplea y la preferencia que para una hipótesis expresa en la ley, tiene, en buena hermenéutica, un precepto *especial* sobre una *regla general,* cuando, además, ha sido aquél consignado en el mismo Código *después* que éste."

Manresa se expresa así en el tomo 4, página 281, de sus Comentarios al Código Civil Español:

"En efecto: el art. 356 dice, en general, que el que percibe los frutos tiene obligación de abonar los gastos hechos por un tercero para su producción, recolección y conservación. Los términos son exactos y aplicables, lo mismo a las fincas rústicas que a las urbanas, lo mismo a los bienes muebles que a los semovientes, lo mismo en el caso de posesión que en otro cualquiera. El que percibe los frutos paga esos gastos ordinarios que la ley de Partidas y las sentencias de 7 de

Marzo de 1867, 17 de Abril de 1874 y 5 de Noviembre de 1881, consideraban como baja necesaria de dichos frutos. El poseedor de buena fe percibe los frutos, y de su cuenta son los gastos de producción, recolección y conservación. El poseedor de mala fe ha hecho gastos para producir los frutos que en definitiva percibe el propietario, pues dichos gastos han de ser de cuenta del perceptor. Ni vale alegar la mala fe, porque, como dice Laurent, el art. 356 se halla escrito más bien para el poseedor de mala fe, verdadero tercero, que para otro cualquiera, y porque nadie debe enriquecerse con perjuicio de otro, y puesto que el propietario percibe los frutos justo es que descuente los gastos.

"Tampoco obstan las palabras del art. 455: 'el poseedor de mala fe sólo tendrá derecho a ser reintegrado por los gastos necesarios hechos para la conservación de la cosa', porque hemos partido del supuesto de que intencionalmente no habla el Código en los artículos 451 y 455 de los gastos de cultivo en general, respetando la regla del 356, y así, puesto que sólo trata de los que él califica de necesarios, útiles y de mero recreo, con relación solamente a éstos y no a otros gastos especiales, dice que nada más que los necesarios son abonables al poseedor de mala fe. Y aun debe sostenerse que los gastos de cultivo, entretenimiento, sostenimiento, etc., son *necesarios* para la producción de la cosa."

Y Scaevola, en el tomo 8 de sus Comentarios al Código Civil Español, página 490, dice así:

"Así creemos nosotros que razonaron los autores del Código Civil, y por esto en el Art. 455 expusieron que el poseedor de mala fe abonará los frutos percibidos y los que el poseedor legítimo hubiese podido percibir, y sólo tendrá derecho a ser reintegrado de los gastos necesarios hechos para la conservación de la cosa.

"Y tras este breve discurso, preguntamos: ¿es lícito, una vez conocido el espíritu del precepto, sabidos ya los derroteros que siguió el pensamiento de los legisladores, es lícito, repetimos, sostener que el poseedor de mala fe carece de derecho para reclamar el abono de los gastos de producción, recolección y conservación de los frutos?

"Opinamos en sentido negativo. Se opone a ello el principio justificadísimo consignado en el art. 356 del Código. Batalla también en contra el art. 453. Pero sobre todo, contradice semejante absurda tesis el espíritu de la ley, el imperio de la equidad, que no obstante las deficiencias de la letra y las confusiones de los conceptos, descuella vigoroso mostrando con viva claridad cuál ha sido

la inspiración sana del legislador, no revelada con lucidez en el texto sintético del articulado.

"Justa, y aun mejor, necesaria, es la represión de mala fe; pero no nos parece equitativo ni jurídico que la pena del culpable refluya en acrecentamiento indebido del patrimonio del victorioso en la contienda."

Como se ve, los tres comentaristas están de acuerdo en que sería una solución justa considerar que el artículo 455 debe ser entendido sin perjuicio o bajo el complemento del artículo 356. Sánchez Román llama sin embargo la atención al texto terminante del artículo 455 del Código Civil Español. Nosotros opinamos que el poseedor de mala fe tiene derecho a que se le abonen los gastos incurridos en la producción, recolección y conservación de la cosa poseída. Opinamos con Manresa y Scaevola, porque entendemos que los artículos 290 y 384 del Código Civil deben armonizarse para que puedan realizarse los fines de la justicia y porque consideramos que esta interpretación está de acuerdo con el espíritu de la ley.

De acuerdo con este criterio, los demandantes deben abonar el importe del agua consumida desde el 4 de abril de 1923 hasta el día 21 de mayo de 1926, y desde la fecha del emplazamiento de los demandados de la presente acción hasta el momento de la restitución del inmueble. También aparece pagada por los demandados la cantidad de $255.83 como prima de la póliza de seguro contra incendio sobre los edificios que existían en la finca. Alegan los demandados en el hecho primero de su contrademanda, aceptado por los demandantes, que éstos, cuando se constituyó la hipoteca, se obligaron a mantener asegurados contra incendio los edificios que contenía la finca hipotecada. El importe del seguro no puede considerarse como mejora ni como gasto necesario; pero como el aseguramiento de los edificios beneficia exclusivamente al propietario, ya que el poseedor de buena fe no responde de la pérdida de la cosa, y el de mala fe únicamente responde de esta pérdida, ocasionada por fuerza mayor,

cuando maliciosamente haya retardado la entrega de la cosa a su poseedor legítimo, lo que no ha ocurrido en este caso, por lo menos con antelación a la fecha en que los demandados fueron notificados de esta demanda, respetamos el compromiso contraído y aceptamos el pronunciamiento de la corte inferior, condenando a los demandantes a satisfacer a los demandados la suma de $255.83 pagados por el seguro de los edificios. Hemos dicho que el seguro beneficia exclusivamente al propietario basados en que, de no existir la póliza, los demandantes no hubiesen podido reclamar indemnización en caso de que los edificios hubiesen sido destruídos por incendio. Los demandantes además no han hecho objeción alguna al pronunciamiento de la corte sobre esta partida.

En cuanto a los $1,200.77 pagados por los demandados por concepto de contribuciones, nada tenemos que decir porque los demandantes en su contestación a la contrademanda se obligan a satisfacer a los contrademandantes el importe de las contribuciones pagadas hasta la fecha en que la finca les sea reintegrada. En cuanto a los $14 pagados por los demandados a la Liga de Propietarios, y que según el demandado Rafael Rivera Oyola fueron utilizados para desahucio, entendemos que no deben ser pagados por los demandantes.

En resumen, opinamos que de acuerdo con los términos de esta opinión deben hacerse los siguientes pronunciamientos:

Declarar nulo el procedimiento ejecutivo hipotecario instituído por Francisco Rivera Colón contra Antonio Román Benítez, condenando a los demandados a restituir a los demandantes la finca que se describe en la demanda, con sus frutos civiles que se estiman en $60 mensuales, desde el 4 de abril de 1923 hasta el 21 de mayo de 1926, y desde la fecha en que los demandados fueron notificados de la demanda hasta el momento de la restitución de la finca, debiendo entenderse que esta finca debe ser restituída liberada de la hipo-

teca por $5,000 constituída a favor de Lorenzo Alois o mediante previo pago a los demandantes del importe de la hipoteca con los intereses que se adeuden en la fecha de la restitución;

Condenar a los demandantes a satisfacer a Francisca Rivera Gómez, como condición precedente a la restitución de la finca, la cantidad de $8,000 con sus intereses al 12 por ciento anual desde el último plazo de dichos intereses pagados por los demandantes que fué el 28 de marzo de 1922, hasta el 21 de mayo de 1926, y desde la fecha en que la demanda fué notificada a los demandados hasta el día en que la finca sea restituída a su legítimo dueño;

Condenar a los demandantes a satisfacer a los demandados la cantidad de $1,200.77, pagados por los demandados por concepto de contribuciones desde el año 1923 hasta el año 1929;

Condenar a los demandantes a pagar el importe del agua consumida en la finca desde el 4 de abril de 1923 hasta el 21 de mayo de 1926, y desde la fecha en que los demandados fueron notificados de la demanda hasta el día de la restitución de la finca;

Condenar a los demandantes a pagar a los demandados la cantidad de $255.83 pagados por el seguro de los edificios que en la finca existían;

Condenar a los demandantes a pagar a los demandados la cantidad de $2,021.40, importe de las mejoras introducidas en la finca mientras los demandados poseyeron de buena fe, debiendo cada parte pagar sus costas.

*La sentencia deberá modificarse de acuerdo con los términos de esta opinión y después de dictarse nuestra sentencia en substitución de la parte modificada, confirmarse en todos sus demás particulares.*