MODESTA CONCEPCIÓN COSME, en su carácter de madre natural con patria potestad sobre sus hijos menores naturales reconocidos ALBERTO PADÍN CONCEPCIÓN, JOAQUÍN y CARMEN PADÍN CONCEPCIÓN, conocidos también por JOAQUÍN y CARMEN CONCEPCIÓN, demandantes y apelantes, *v.* DEMETRIO LATONI PECUNIA, demandado y apelado.

Núm. 7143.—*Sometido:* Abril 1, 1937. *Resuelto:* Mayo 26, 1937.

*A. Casanova Prats,* abogado de los apelantes; *Dubón & Ochoteco,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Modesta Concepción Cosme, madre natural con patria potestad sobre sus menores hijos naturales reconocidos Alberto, Joaquín y Carmen Padín Concepción, habidos como resultado de sus relaciones amorosas con don Joaquín Padín Martínez, entabló demanda contra Demetrio Latoni Pecunia, solicitando la nulidad del procedimiento ejecutivo hipotecario seguido por éste contra dichos menores.

Los hechos fundamentales de este caso pueden resumirse así:

Don Joaquín Padín Martínez falleció en 30 de abril de 1929, habiendo otorgado testamento por el cual instituyó y nombró por sus únicos y universales herederos a sus menores hijos aquí demandantes, por partes iguales. Entre los bienes del finado figuraban dos casas ubicadas en la ciudad de San Juan. Al fallecimiento del testador cada una de dichas casas estaba afecta a una hipoteca constituída por el testador a favor de doña Encarnación Aboy Vda. de Cintrón, en garantía de un préstamo de $4,000, de sus intereses al 12 por ciento anual y de un crédito adicional para el caso de ejecución.

El testamento de don Joaquín Padín Martínez contenía una disposición por la cual el testador nombraba a don Manuel García Lago tutor de los menores demandantes.

Vencidos los créditos hipotecarios de la Sra. Aboy Viuda de Cintrón y no teniendo los menores demandantes la suma necesaria para impedir su ejecución, en 24 de diciembre de 1930, don Manuel García Lago, en su carácter de tutor testamentario y administrador de los bienes de los tres menores

demandantes promovió ante la Corte de Distrito de San Juan el expediente núm. 13,745 sobre Autorización Judicial, en el que hacía constar la existencia y vencimiento de los referidos créditos hipotecarios, el requerimiento de pago hecho por la acreedora, la carencia de fondos con que pagar el importe adeudado, el peligro de que las fincas se perdiesen si la acreedora procedía al cobro por la vía judicial, y solicitaba permiso para hipotecarlas al demandado Latoni por la suma de $8,500, al 12 por ciento anual, por un plazo de tres años y para invertir dicha suma en el pago y cancelación de las dos hipotecas mencionadas y en los gastos que originase esta nueva negociación. Concedida la autorización solicitada, el referido tutor testamentario, en diciembre 30 de 1930 otorgó hipoteca voluntaria a favor del demandado para garantizar a éste el principal del préstamo, sus intereses y $800 de crédito adicional. De la suma tomada a préstamo, $8,330.35 fueron aplicados por el tutor testamentario al pago de las hipotecas y a cubrir los gastos y desembolsos causados por la cancelación de dichos gravámenes y por la constitución y registro de la nueva hipoteca a favor del demandado. El sobrante de $169.75 fué depositado en la secretaría de la corte de distrito.

Habiendo dejado de pagar los menores demandantes los intereses correspondientes a seis mensualidades, ascendentes a $510, el acreedor Demetrio Latoni radicó demanda de ejecución de hipoteca en 18 de mayo, 1932, en la que solicitó se requiriera de pago al entonces tutor de los menores, don Francisco Font Manzano, así como a los menores, por tener éstos más de 14 años de edad. Hecho el requerimiento en la forma indicada y seguidos los demás trámites legales, las dos fincas hipotecadas fueron vendidas en pública subasta y adjudicadas al acreedor Latoni por la suma de $9,010, dejando sin cubrir la suma de $850 de costas y honorarios.

La demanda interpuesta a nombre de los menores alega tres causas de acción. La primera se basa en la alegada nulidad del nombramiento de tutor testamentario, hecho a

Manuel García Lago por el testador, padre de los menores, estando viva y por tanto con patria potestad sobre los mismos, la madre natural de dichos menores; y en la alegada nulidad de la hipoteca constituída por dicho tutor a favor del demandado. Se basa la segunda en la alegada nulidad del nombramiento de tutor hecho a favor del Sr. Francisco Font Manzano, por la corte de distrito, al renunciar don Manuel García Lago su cargo de tutor testamentario, por corresponder la tutela de dichos menores a su madre natural Modesta Concepción Cosme; y en la nulidad del requerimiento de pago hecho a un tutor ilegalmente nombrado y en la falta de requerimiento a la madre de los menores deudores. En la tercera causa de acción se alega que el demandado está en posesión ilegal y de mala fe de las dos fincas; que esas fincas han producido al demandado rentas mensuales por las sumas de $119 y $140, respectivamente, desde la fecha en que el demandado entró en posesión de ellas.

Los demandantes piden sentencia por la que se declaren nulos (a) el nombramiento del tutor testamentario; (b) la hipoteca otorgada por dicho tutor testamentario a favor del demandado; (c) el procedimiento ejecutivo hipotecario seguido por el demandado contra los menores demandantes y la venta hecha por el márshal a favor del demandado, así como su inscripción en el Registro. Suplican además que se condene al demandado a pagar a los demandantes la suma de $4,134 por concepto de alquileres dejados de obtener por los menores, más los que se devenguen hasta la terminación del litigio, más las costas, gastos y honorarios de abogado.

El demandado, después de negar específicamente los hechos esenciales, alegó hechos en contrario que resumimos así:

1. Que Modesta Concepción Cosme no ha ejercido ni ejerce la patria potestad sobre los menores demandantes, por haber sido privada de ella por disposición testamentaria del causante de dichos menores, la cual no ha sido impugnada por la demandante, a pesar de haber tenido conocimiento de ella.

2. Que Manuel García Lago fué nombrado administrador judicial de los menores con el expreso consentimiento de la madre de éstos, Modesta Concepción Cosme, constante en estipulación de 29 de junio de 1929, suscrita por los abogados de Manuel García Lago y de Modesta Concepción Cosme, y en virtud de la cual se decretó la administración judicial de los bienes y se hizo el nombramiento del Administrador.

3. Que el demandado no recibió las sumas alegadas por los demandantes, ni ninguna otra suma, por concepto de alquileres de las dos casas, y que por el contrario tuvo que gastar $2,500 en reparar las fincas para ponerlas en condiciones de rentar.

En su contrademanda pidió el demandado la desestimación de la demanda y en caso de que ésta no procediere, que se dictara sentencia condenando a los demandantes a pagar al·demandado $9,010 como importe del crédito e intereses vencidos, más $850 de costas y honorarios, más $661.22 pagados por el demandado por contribuciones adeudadas por las dos fincas, más $2,500 por las reparaciones hechas en ambas propiedades, ascendente en total a $13,021.22, más las costas, gastos y honorarios que origine la presente acción.

Celebrada la vista del caso, la Corte de Distrito dictó sentencia declarando sin lugar la primera y la tercera y con lugar la segunda de las causas de acción alegadas en la demanda; y declaró con lugar la contrademanda, condenando a los menores demandantes y contrademandados a pagar al demandado y contrademandante la suma de $8,500 importe del préstamo, más $510 de intereses devengados hasta abril de 1932, más $661.22 por contribuciones, más $2,500 importe de las reparaciones, o sea un total de $12,171.22, sin especial condenación en costas. Se provee además en dicha sentencia que el crédito por la referida cantidad representa un gravamen preferente sobre las dos fincas, en la proporción de por mitad cada una. Los demandantes han interpuesto el presente recurso, basado en un pliego de excepciones y exposición del caso y en los errores señalados en el alegato de los apelantes.

Las cuestiones legales envueltas en los seis primeros y en el 10°. y 13°. señalamientos pueden plantearse así:

1ª.—¿Es válido el nombramiento de tutor de sus menores hijos naturales reconocidos, hecho por el testador, estando viva la madre natural de los menores?

2ª.—Asumiendo que el nombramiento de tal tutor bajo las circunstancias expresadas fuese inválido, ¿ha quedado convalidado el contrato celebrado para beneficio de los menores, por los actos realizados por la propia madre natural, con posterioridad al fallecimiento del causante y después de tener conocimiento de tal nombramiento y por las órdenes dictadas por la corte de distrito para la protección de los intereses de los menores?

█ La voluntad del testador fué expresada en las siguientes palabras:

"En uso del derecho que le concede la ley elige y nombra tutor de sus menores hijos Joaquín, Carmen y Alberto, a su amigo don Manuel García Lago, mayor de edad, soltero, comerciante y vecino de esta ciudad, con relevación de fianza, confiriéndole las facultades en derecho necesarias; y si bien por ministerio de la ley, la madre natural de sus menores hijos, la citada Modesta Concepción y Cosme, tiene la patria potestad sobre dichos menores, velando por el bienestar y la educación de mis hijos, he creído conveniente el nombramiento de tutor que acabo de hacer, por las razones de que dicha madre hace mucho tiempo que no vive con sus hijos, a los cuales ha abandonado, y por ser una mujer muy ignorante que de asumir la administración de los bienes que dejo a mis hijos, estarían éstos expuestos a sufrir privaciones y a presenciar malos ejemplos."

La veracidad de las razones aducidas por el testador para justificar el nombramiento de tutor quedó establecida por la declaración de la propia demandante en el acto del juicio, en la que manifestó que se había separado de su amante Joaquín Padín Martínez porque no congeniaban; que los hijos de Padín se quedaron viviendo con él; y que ella se fué seis meses después de haberse dejado con Padín a vivir con otro hombre, con el que tuvo varios hijos, el primero de los cuales nació en el 1920.

No aparece del récord que la demandante impugnara con

anterioridad a la iniciación del presente litigio el nombramiento de tutor hecho por el testador. Por el contrario, la corte inferior declaró probados e incontrovertidos los hechos siguientes:

1. Que en junio 5 de 1929, Manuel García Lago, albacea y tutor de los menores, promovió la administración judicial de los bienes del testador (Caso núm. 9699); que Modesta Concepción Cosme, por representación de su abogado Enrique Lefebre, suscribió una estipulación por la que daba su consentimiento para que se declarase la administración judicial y se nombrase administrador a Manuel García Lago *"por razón del conocimiento íntimo que tiene de los asuntos de la testamentaría y en bien de ésta retira su oposición a que se nombrara administrador en propiedad al mismo, estipulando su nombramiento con la otra parte"*; que en virtud de dicha estipulación la corte decretó la administración judicial y nombró administrador a Manuel García Lago, quien prestó fianza, juró el cargo y tomó posesión del mismo.

2. Que en 24 de diciembre de 1930, Manuel García Lago, entonces tutor y administrador de los bienes de los menores, promovió el expediente núm. 13,745 ante la Corte de Distrito de San Juan, sobre autorización judicial, para contratar el préstamo con el demandado Latoni, con el fin de pagar las hipotecas vencidas y salvar las fincas hipotecadas a la Sra. Viuda de Cintrón; que la corte concedió la autorización en 29 de diciembre de 1929; y que el día 30 del mismo mes se constituyó la hipoteca de cuya nulidad se trata y se pagaron y cancelaron los dos créditos ya mencionados.

3. Que habiendo renunciado Manuel García Lago los cargos de tutor y administrador judicial, la Corte de Distrito de San Juan, en 23 de junio de 1931, a petición del menor Joaquín Padín, nombró tutor y administrador de los bienes de los menores a don Francisco Font Manzano.

Basándose en esos hechos, la corte inferior sostuvo que aún cuando a la muerte del padre natural y por ministerio de la ley (artículo 152 del Código Civil, ed. 1930) la madre adquirió la patria potestad sobre los menores, el testador podía nombrarles un tutor para la administración de los bienes que dichos menores habían de heredar por virtud de

su testamento, especialmente teniendo en cuenta que los menores en el presente caso eran herederos forzosos solamente en cuanto a una tercera parte de la herencia y herederos voluntarios a manera de legado en cuanto a los otros dos tercios. E interpretando la voluntad del testador, expresada en la disposición testamentaria arriba transcrita, sostuvo el juzgador que el nombramiento de Manuel García Lago como tutor de los menores estaba limitado a la administración de los bienes y que no había ultraje para la institución de la patria potestad. Y a tono con esa interpretación declaró válida la hipoteca a favor del demandado y nula su ejecución, por no haberse requerido de pago a la madre de los menores, quien tenía la patria potestad sobre sus hijos.

Es indiscutible que al fallecimiento del padre, la patria potestad sobre los hijos naturales reconocidos por ambos progenitores correspondía a la madre natural, de acuerdo con el artículo 154 del Código Civil (Ed. 1930); que la administración de los bienes de esos menores correspondía también a la madre, según lo dispone el artículo 158 del mismo Código; y que de acuerdo con las disposiciones generales en materia de tutelas (Título IX, Cap. I, Art. 167, del Código Civil), el objeto de la tutela es la guarda de la persona y bienes, o solamente de los bienes, de los que, no estando bajo la patria potestad, son incapaces de gobernarse por sí mismos.

El Código Civil (ed. 1930) consagra el derecho de los padres que hayan instituído heredero a un hijo menor o a un hijo mayor pero incapacitado, a nombrarle por testamento un tutor, disponiendo:

"Artículo 174.—El padre o la madre pueden nombrar tutor en su testamento para sus hijos menores y para los mayores incapacitados."

El artículo 206 del Código Civil Español, que es el equivalente al artículo 174, supra, dice así:

"El padre puede nombrar tutor y protutor para sus hijos menores y para los mayores incapacitados, ya sean legítimos, ya naturales

reconocidos, o ya alguno de los ilegítimos a quienes, según el art. 139, está obligado a alimentar.

"Igual facultad corresponde a la madre; pero, si hubiere contraído segundas nupcias, el nombramiento que hiciere para los hijos de su primer matrimonio no surtirá efecto sin la aprobación del Consejo de familia.

"En todo caso será preciso que la persona a quien se nombre tutor o protutor no se halle sometida a la potestad de otra."

Como se ve, el artículo del Código español es mucho más amplio que el que está hoy en vigor en Puerto Rico. Comentando este artículo, Scaevola se expresa así:

"Es de notar que este derecho de nombrar tutor por testamento a los hijos corresponde por igual a los dos cónyuges, guardando siempre la preferencia de que por la naturaleza y por la ley disfruta el varón en la familia. Pero ¿quiere esto decir que si el padre, v. gr., a su fallecimiento, y en su disposición testamentaria, designare tutor a sus hijos para el caso de que falleciese la madre antes de que los hijos habidos llegaren a la mayor edad, quedaría aquélla incapacitada para hacer uso de los derechos que el Código le concede como dimanantes de la patria potestad? En nuestro sentir, no. Una cosa es la hegemonía de que el padre disfruta mientras rige y gobierna la sociedad matrimonial, y otra muy distinta la potestad de la madre, que no puede ser absorbida por el predominio del marido; así, pues, nosotros entendemos que el Código Civil, en su art. 206, al conceder a los padres el derecho pleno de nombrar tutor por testamento a sus hijos, limita la facultad al cónyuge supérstite; pues que, de otra suerte, en vez de la concordia e igualdad de los derechos, reinaría un odioso privilegio.

"Ésta es, por otra parte, la tendencia manifiesta de los Códigos europeos. Sirva de prueba el art. 242 del Código Civil italiano, cuyo tenor es el siguiente: 'Corresponde el derecho de nombrar tutor pariente o extraño al padre o madre supérstite.'

"Igual principio se deriva del art. 193 del Código Civil portugués, puesto que admite que sólo en defecto o imposibilidad del padre puede la madre nombrar tutor por testamento.

"Por último, comprueba lo dicho el art. 397 del Código Civil francés, que establece 'que el derecho de elegir un tutor pariente o extraño corresponde al cónyuge sobreviviente,' palabras que si no son una traducción literal del artículo enunciado, expresan con la suficiente claridad su contenido.

"Ésta es también, por otra parte, la opinión de los autores. Laurent, tratando de la tutela testamentaria, dice: 'La ley concede este derecho al último superviviente, padre o madre. De aquí síguese que el primero que fallezca no puede nombrar un tutor testamentario. La tutela pertenece de derecho al superviviente, y ni el padre ni la madre puede privar a su cónyuge de la tutela. Y es evidente. Cuando viven ambos esposos, los dos comparten en el seno de la familia el poderío sobre los hijos; cuando uno de ellos baja al sepulcro, entonces todo el poder refluye en el que vive, bien sea éste el marido, bien la esposa, ya que afortunadamente, y reivindicando nuestras honrosas tradiciones, hemos llegado a conferir a esta última el derecho que la corresponde. ¿No sería exonerarla del mismo si se le desmembrara, acaso de uno de los más nobles privilegios, de la patria potestad?

"Un inciso del artículo que tratamos viene a darnos la razón. Dice así: 'En todo caso, será preciso que a la persona a quien se nombre tutor o protutor no se halle sometida a la potestad de otra.' Y este párrafo, que dada su redacción algo confusa, parece no tener aplicación al caso de que nos ocupamos, tiénela, sin embargo, extraordinaria. Leído a prisa, muchos sin duda estimarán, y no sin motivo, que esta disposición se refiere a los tutores y protutores, cuando a quien hace directa alusión es a las personas que por su minoridad o incapacidad están sujetas a tutela. Que no concierne a los primeros, lo demuestra la colocación del inciso dentro del art. 206, dedicado exclusivamente a determinar la facultad de los padres y la condición de los hijos a quienes se extiende, y además, que sería una inútil repetición de lo expuesto en el art. 199, en directa relación con el núm. 1°. del art. 237 del Código Civil.

"El inciso a que nos venimos refiriendo quiere decir que cuando el padre o la madre hagan uso de su derecho designando tutor por testamento a sus hijos, debe entenderse que si al fallecimiento del primero viviese la segunda, o viceversa, si al fallecimiento de esta última viviera aquél, la designación no es válida, puesto que el hijo queda sometido a la potestad del sobreviviente, cuya potestad rechaza en absoluto la existencia de la tutela, tanto porque al que tiene padre o madre no se le debe dar tutor, cuanto porque la designación va aneja al que disfruta de la potestad." Scaevola, Vol. 4, págs. 180–181.

Nótese que el artículo 242 del Código Civil italiano y el 397 del Código Civil francés establecen que el derecho de

elegir un tutor pariente o extraño corresponde al cónyuge superviviente. El Código portugués también especifica claramente cuándo la madre puede nombrar tutor por testamento. En el artículo del Código Español no aparece la palabra "superviviente". Scaevola añade esta palabra, porque cree, al interpretar el artículo 206, que ésta fué la intención del legislador. Obsérvese que el comentarista español da mucho énfasis al último inciso del referido artículo, donde se dice que en todo caso será preciso que la persona a quien se nombre tutor o protutor no se halle sometida a la potestad de otra. Esta última disposición no está en vigor en Puerto Rico. Fué suprimida al aprobarse el artículo 174 de nuestro Código Civil que otorga al padre y a la madre la facultad general de nombrar tutor en su testamento a sus menores hijos o a los mayores incapacitados. Existen, sin embargo, otras disposiciones del Código que deben interpretarse en armonía con este artículo para establecer una conclusión correcta.

La patria potestad sobre los hijos legítimos no emancipados corresponde en primer término al padre, y, en ausencia, impedimento legal o muerte de éste, a la madre. Los hijos ilegítimos y los adoptivos menores de edad estarán bajo la potestad del padre o de la madre que los haya reconocido o adoptado. Si ambos los hubieran reconocido o adoptado, la patria potestad corresponderá en primer término al padre, y, en ausencia, impedimento legal o muerte de éste, a la madre. Artículo 152, Código Civil, edición de 1930.

Dispone el artículo 154 que la administración de los bienes de los hijos que están bajo la patria potestad pertenece en primer término al padre y en ausencia, impedimento legal o muerte de éste a la madre.

También dispone el artículo 167 que el objeto de la tutela es la guarda de la persona y bienes, o solamente de los bienes, de los que no estando bajo la patria potestad, son incapaces de gobernarse por sí mismos.

La corte inferior declaró válida la disposición testamentaria sobre el nombramiento de tutor, entendiendo que el testador podía establecer condiciones y nombrar un administrador para los bienes, por lo menos en lo que respecta a los dos tercios de libre disposición, especialmente si la madre no hacía vida común con los hijos.

¿Puede el padre o la madre, de acuerdo con el artículo 174 del Código Civil, privar por testamento al otro cónyuge de los derechos de la patria potestad? Opinamos que no. Si interpretáramos aisladamente el artículo 174 del Código Civil quizás nos veríamos obligados a sostener la afirmativa. Pero existiendo otros preceptos del Código que indican claramente los derechos del cónyuge superviviente sobre sus hijos y sus bienes, no creemos que la intención del legislador haya sido autorizar a uno de los esposos a privar al otro de los derechos inherentes a la patria potestad.

De acuerdo con las disposiciones legales y comentarios citados, debemos resolver que el nombramiento de Manuel García Lago, como tutor de los menores demandantes, era nulo y que al fallecimiento del testador la madre sobreviviente adquirió por ministerio de la ley la patria potestad sobre los menores y el derecho a administrar sus bienes.

El nombramiento de Manuel García Lago como Albacea no ha sido impugnado por los demandantes. Del récord aparece que dicho señor aceptó el cargo de Albacea y que obtuvo de la Corte de Distrito de San Juan las cartas testamentarias o de albaceazgo requeridas por la ley. Fué en cumplimiento de su deber como tal albacea, por existir herederos menores de edad y deudas que solventar, que Manuel García Lago promovió la administración judicial de los bienes correspondientes a dichos menores. Véanse: Carbia v. Carbia, 10 D.P.R. 400, y Artículos 556 y 558 del Código de Enjuiciamiento Civil (ed. 1933). La madre natural de los menores, quien tenía la patria potestad y como derecho que de ella emanaba el de administrar los bienes de

sus hijos, consintió expresamente el nombramiento hecho por la corte a favor de Manuel García Lago, por considerarlo beneficioso para los intereses de los menores por el íntimo conocimiento que dicho señor tenía de los bienes de la herencia. La estipulación suscrita por su abogado, y que fué presentada a la corte como expresiva del consentimiento de la madre natural, no ha sido impugnada por ella en ningún momento. Es cierto que la demandante se opuso en el acto del juicio a que dicha estipulación fuese admitida como prueba, pero la corte procedió correctamente al aceptarla como evidencia del consentimiento de la madre natural para que se nombrase un administrador judicial, especialmente en vista de que la otorgante de dicha estipulación no impugnaba la autorización de su abogado para firmarla en su nombre y se limitaba a oponerse a su admisión, sin alegar razones o fundamentos para sostener la alegada inadmisibilidad.

Debemos sostener que habiendo consentido el nombramiento de un administrador judicial de los bienes de sus menores hijos e inducido al demandado a contratar con dicho administrador el préstamo hipotecario que la corte de distrito consideró útil y necesario para salvar las dos fincas de la ejecución de los dos créditos constituídos sobre las mismas por el testador en favor de la señora Viuda de Cintrón, la demandante, madre natural de los menores demandantes, aceptó la validez de la orden dictada por la Corte de Distrito de San Juan, en el expediente núm. 13,745, sobre autorización judicial, por la cual se autorizó a Manuel García Lago para contratar el referido préstamo con el demandado. Opinamos con la corte inferior que la administración judicial, el nombramiento de Manuel García Lago y la autorización judicial concedida a éste para la contratación del aludido préstamo quedaron convalidados por el acto voluntario de la madre natural de los demandantes, y en consecuencia que la hipoteca a favor del demandado quedó legalmente constituída.

■ Alegan los apelantes que al constituir el gravamen hipotecario a favor del demandado, don Manuel García Lago actuó como tutor y no como administrador de los bienes de los menores, por haber renunciado el cargo de administrador con anterioridad a la fecha del otorgamiento de la escritura de hipoteca. Entre la prueba documental ofrecida por los demandantes no figura la escritura de hipoteca a favor del demandado. No habiéndonos colocado los apelantes en condiciones de que podamos determinar el carácter con que actuara Manuel García Lago al otorgar la escritura de hipoteca de 30 de diciembre de 1930, y apareciendo comprobado por la prueba documental del demandado que el referido señor había sido expresamente autorizado para tal otorgamiento por la corte de distrito, por resolución de fecha 24 de diciembre del mismo mes y año, y no habiéndose alegado ni probado que tal autorización hubiese sido revocada o limitada en manera alguna, debemos presumir que al otorgar dicha escritura Manuel García Lago actuó de acuerdo con y dentro de los límites de la autorización concedídale por la corte de distrito para que pudiese llevar a efecto la contratación de un préstamo que dicho tribunal consideró útil y necesario para la protección de los intereses de los menores.

■ Admiten los menores apelantes que la contratación del préstamo de $8,500 que les hizo el demandado fué beneficioso para sus intereses, pues con esos fondos pudieron librarse las dos casas de la ejecución que intentaba iniciar la anterior acreedora hipotecaria; y reconocen la obligación que tienen de devolver el principal del préstamo al demandado. Arguyen, sin embargo, que esa obligación debe limitarse a la suma de $8,000, que fué la cantidad dedicada a la cancelación de las anteriores hipotecas, y que no debe obligárseles a devolver el importe de los gastos originados por la cancelación de dichos gravámenes y por la constitución y registro de la hipoteca a favor del demandado; y que tampoco se les debe obligar al pago de intereses al tipo esti-

pulado de 12 por ciento anual, debiendo imponérseles solamente el pago de intereses al tipo legal de 6 por ciento anual.

La sentencia del tribunal inferior se ajusta, a nuestro juicio, a los más sanos principios de la equidad. Decretar la nulidad del crédito del demandado, imponiendo a éste la pérdida del capital prestado y que fué usado para pagar deudas de los demandantes y salvar a éstos sus propiedades amenazadas de ejecución, equivaldría a permitir el enriquecimiento injusto de los demandantes a expensas de quien les ayudó de buena fe, confiado en la legalidad y suficiencia de la autorización judicial de la corte de distrito. Así lo ha admitido la representación de los apelantes al manifestar que sus representados reconocen que están obligados a devolver los $8,000 pagados a la señora Viuda de Cintrón. ¿Por qué no han de estar igualmente obligados a devolver el importe de los gastos originados por la cancelación de los anteriores gravámenes y la constitución del nuevo, y a satisfacer los intereses al tipo estipulado? No vemos razón alguna para la diferencia que pretenden establecer los apelantes y opinamos que la corte inferior no erró al condenarles a devolver la totalidad del crédito, más sus intereses al tipo convenido y aprobado previamente por el mismo tribunal.

■■ Los señalamientos séptimo, octavo y noveno pueden ser tratados como uno solo. Alegaron los demandantes que el demandado estaba en posesión de las fincas ilegalmente y de mala fe y que dichas fincas "han producido al demandado rentas o alquileres mensuales de $119 una y $140 la otra, desde la fecha en que el demandado entró en posesión." Negó el demandado esos hechos en esta forma:

"Niega el demandado que dichas fincas hayan producido al demandado rentas o alquileres mensuales por la suma de $119 la finca descrita bajo la letra 'A' y $140 la finca descrita bajo la letra 'B,' ni ninguna otra suma de dinero."

Y alegó además que tuvo que reparar las dos casas, a un costo de $2,500 para ponerlas en condiciones de rentar.

La controversia o *issue* en cuanto al montante de las rentas quedó perfectamente planteada por las alegaciones de ambas partes. La contestación del demandado sobre ese extremo no envuelve ninguna admisión, toda vez que el demandado negó haber recibido las sumas especificadas en la demanda *o cualquiera otra suma*. No cometió error la corte inferior al resolver que no se trataba de un *negative pregnant*.

Es cierto que correspondía a los demandantes probar su alegación afirmativa en cuanto a las sumas realmente recibidas por el demandado por concepto de alquileres. Pero no es menos cierto que el demandado, como poseedor de las fincas, estaba en mejores condiciones que los demandantes para saber lo que las mismas produjeron durante el tiempo de su posesión. Pudiendo haber ayudado al esclarecimiento de la verdad, compareciendo ante la corte a declarar sobre los hechos, optó por no hacerlo. Hemos examinado la evidencia ofrecida para probar ese extremo y la consideramos insuficiente. Se refería dicha prueba a lo que las casas rentaron hasta marzo de 1929, al padre de los demandantes, y no a las rentas que realmente produjeran o debieran haber producido. al demandado durante el tiempo que éste las poseyó. La corte sentenciadora no tuvo ante sí los elementos necesarios para poder fijar la cuantía de la reclamación. Véanse: *Morales* v. *Landráu,* 15 D.P.R. 782; *Román Benítez* v. *Rivera,* 43 D.P.R. 538; y *Pontón* v. *Sucrs. de Huertas y González,* 46 D.P.R. 796.

Considerando que es nuestro deber hacer cumplida justicia entre las partes litigantes, adjudicar sus respectivos derechos, y no permitir el enriquecimiento de una parte a expensas de la otra; y no estando convencidos de que el demandado no percibiera cantidad alguna por concepto de cánones de arrendamiento de las dos fincas durante el tiempo que estuvo en posesión de dichas propiedades, opinamos que debe dejarse sin efecto la sentencia de la corte inferior en

cuanto declaró sin lugar la reclamación de las rentas percibidas por el demandado y las que los demandantes dejaron de percibir o hubieran podido percibir y devolverse el caso a la corte inferior para que lo abra a prueba en cuanto a esos extremos, requiriendo al demandado para que rinda cuenta de las cantidades realmente percibidas por él por concepto de cánones de arrendamiento y dando una oportunidad a los demandantes para que presenten la evidencia que pudieren tener en oposición a la que ofreciere el demandado.

■ No cometió la corte inferior el undécimo error señalado. Los menores demandantes, como dueños de las fincas hipotecadas, estaban obligados a pagar las contribuciones impuestas a dichos inmuebles durante el tiempo que las poseyó el demandado. Esa obligación es consecuencia inevitable de la anulación del procedimiento hipotecario seguido por el demandado.

■ Tampoco erró el juzgador al condenar a los demandantes y contrademandados a devolver al demandado la suma de $2,500 reclamada por éste por concepto de reparaciones hechas por él en las casas. Aun cuando considerásemos que el demandado en este caso era un poseedor de mala fe, siempre tendría éste derecho a reclamar los gastos incurridos por él para la conservación de las casas. Ya hemos visto que los demandantes no probaron que el demandado recibiera cantidad alguna por concepto de alquileres durante el término de su posesión. El demandado probó que las fincas habían quedado en condiciones deplorables y en estado de ruina como consecuencia del ciclón de San Ciprián; que las reparaciones eran necesarias para la conservación de las fincas y para poder alquilarlas; y que el costo total de dichas reparaciones ascendió a $2,694.24. Véase: *Román Benítez v. Rivera,* supra.

Del examen de la prueba aducida por ambas partes no surge el manifiesto error de apreciación que se imputa al tribunal sentenciador. La evidencia es ampliamente sufi-

582

ciente para sostener las conclusiones de derecho en que se basa la sentencia. Y no encontramos fundamento para la alegación de que la corte inferior abusó de su discreción al rehusar imponer al demandado el pago de costas y honorarios de abogado.

*Por las razones expuestas se modifica la sentencia apelada en el sentido de dejar sin efecto aquella parte de la misma que declara sin lugar la reclamación de los demandantes por el importe de las rentas percibidas por el demandado y las que pudieron haber percibido los demandantes, y se devuelve el caso a la corte inferior para que proceda a abrirlo a prueba en cuanto a la reclamación sobre las rentas, requiriendo al demandado para que rinda cuenta de las rentas realmente percibidas por él desde la fecha de la radicación de la demanda y durante todo el tiempo de su posesión y dando oportunidad a los demandantes para presentar la evidencia que fuere pertinente para probar el valor de los frutos podidos percibir y que no hubieren sido percibidos por culpa, abandono o negligencia del demandado. Y así modificada se confirma la sentencia recurrida.*

El Juez Asociado Señor Hutchison disintió en cuanto a la devolución del caso por estimar que existe base suficiente en la prueba para dictar sentencia definitiva respecto a las rentas dejadas de percibir.