Mario Mercado Riera, cuentadante, apelante y apelado, *v.* Adrián Mercado Riera y María Luisa Mercado Riera de Belaval, opositores, apelados y apelantes.

Núm. 8911.—*Sometido:* Noviembre 4, 1946. *Resuelto:* Enero 14, 1947.

*Francisco Parra Capó y Pedro M. Porrata*, abogados del apelante y apelado; *José A. Poventud y Celestino Iriarte, F. Fernández Cuyar y H. González Blanes*, abogados, respectivamente, de los opositores, apelados y apelantes.

EN MOCION DE RECONSIDERACION

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Por resolución de 24 de julio de 1946, según fué enmendada dos días después, este Tribunal acordó dejar sin efecto su sentencia de 8 de mayo último y oír a las partes únicamente sobre las siguientes cuestiones: (*a*) ¿Erró esta Corte al conceder compensación al albacea? y (*b*) ¿Debe entregarse al padre con patria potestad del menor Adrián V. Mercado Jiménez lo donado a dicho menor por los herederos de Mario Mercado Montalvo?

I

Bajo el art. 908 del Código Civil Español en vigor en Puerto Rico hasta el 1902, fecha en que fué aprobado el Código Civil Revisado, el cargo de albacea era gratuito. Dicho artículo fué adoptado en nuestro Código Civil Revisado y es indudable que hasta el 9 de marzo de 1905 en que se aprobó la Ley Referente a Procedimientos Legales Especiales, ésa era la regla en esta jurisdicción. Pero el art. 53 de dicha ley, tomado del 1618(1) del Código de Enjuiciamiento Civil de California, sin derogar expresamente el art.

---

(1) Desde el año 1931 este artículo pasó a formar parte del *Probate Code of the State of California* bajo los números 901, 902 y 903.

882 del Código Civil Revisado, igual al 830 del Código Civil (ed. 1930) y al 908 del Español, por primera vez en esta jurisdicción declaró remunerado el cargo de albacea. El citado art. 53 que ahora figura en nuestro Código de Enjuiciamiento Civil bajo el núm. 586, dice así:

"Art. 586.—Todo administrador o albacea, a no disponer otra cosa el testamento bajo el cual se le nombra, tendrá derecho a percibir del caudal, en remuneración de sus servicios, el cinco por ciento de los ingresos que ocurran durante la administración, montantes a la cantidad máxima de mil (1,000) *dollars;* 2½ por ciento cuando éstos asciendan hasta diez mil (10,000) dollars; y el 1 por ciento sobre las cantidades que excediesen de diez mil (10,000) dollars. También dispondrá el juez que se abonen al administrador o albacea los gastos indispensables que ocasione la administración, incluso el costo de los anuncios, publicaciones que la ley prescriba, la conservación y guarda de los bienes, consulta de abogado y gastos de viaje."

Es evidente el conflicto entre el art. 830 del Código Civil dispositivo de que el albaceazgo es gratuito y el art. 586 del Código de Enjuiciamiento Civil que fija *a todo albacea* una compensación igual a la que concede a todo administrador judicial. Sin embargo, los opositores a la aprobación de las cuentas del albacea, es decir, los herederos María Luisa y Adrián Mercado Riera, que en lo sucesivo llamaremos "los opositores", tratan de armonizar los dos preceptos antitéticos. A este efecto arguyen que con arreglo a las atribuciones que el testador haya conferido al albacea, éste puede ser un albacea administrador o un albacea simple, según le confiera o no por testamento facultades para administrar el caudal.(²) Partiendo de esa premisa concluyen "los opositores" que el albacea a que se refiere el art. 586 es al albacea administrador y no al simple albacea a quien el testador, como en el presente caso, no ha conferido facultades de administración. De otro lado, el ex albacea sostiene que las facultades que con arreglo al Código Civil tiene el albacea cuando

(²)El art. 823 del Código Civil prescribe:
"Los albaceas tendrán todas las facultades que expresamente les haya conferido el testador, y no sean contrarias a las leyes."

el testador no las ha determinado especialmente, son muy limitadas y que esa circunstancia explica la razón por la cual el Código Civil dispone que ese cargo es gratuito. Arguye entonces que el Código de Enjuiciamiento Civil amplió considerablemente las facultades del albacea, equiparándolas en muchos casos a las del administrador, (³) y que por ese motivo su remuneración fué equiparada a la de éste.

En verdad el Código de Enjuiciamiento Civil ha ampliado considerablemente los deberes del albacea imponiéndole la prestación de ciertos servicios a que no venía obligado bajo el Código Civil y ha aumentado sus responsabilidades en tal forma que sería injusto el privarle de compensación. De ahí que nuestra Legislatura, al aprobar el art. 586 del Código de Enjuiciamiento Civil, el cual corresponde, con ligeras variantes, al art. 1618 del Código de Enjuiciamiento Civil de California, concediese igual compensación al albacea que al administrador, a menos que el testador hubiese dispuesto que el desempeño del cargo fuese gratuito o fijare una compensación distinta de la prescrita por la ley. Los opositores buscan apoyo a su tesis en la circunstancia de que el art. 586, al fijar la compensación del albacea y del administrador, toma por base los ingresos "que ocurran durante la administración" y en el uso de la palabra "administración" se fundan para sostener que fué la intención del legislador compensar al albacea que tuviese la administración del caudal y excluir a aquél a quien el testador no hubiera conferido tal facultad. Si bien es verdad que en casos resueltos por este Tribunal y en algunos del Tribunal Supremo de España se hace referencia al albacea con facultades de administrador, sin embargo, nuestro Código de Enjuiciamiento Civil no establece la distinción que invocan los opositores entre albaceas simples y albaceas administradores. Dicho Código se refiere al albacea sin calificativo alguno. Si nuestra Legislatura, al aprobar el art. 586 hubiera

---

(³) Véanse los siguientes artículos del Código de Enjuiciamiento Civil: 568, 584, 587, 593, 598 y 600. Véase, además, el art. 372 del Código Político.

querido establecer esa distinción que no existe en California, fácil le hubiera sido expresarlo así, refiriéndose al albacea con derecho a compensación como albacea-administrador.

No debemos perder de vista que el art. 586 se refiere conjuntamente al administrador y al albacea y de ahí que use una sola palabra para comprender las funciones de ambos cargos, el de albacea y el de administrador. Y no es extraño que use la palabra "administración" en relación con las funciones del albacea porque Escriche, en su artículo sobre "albacea", usa la palabra "administrar" refiriéndose a la función del albacea y al efecto dice: "Ya por la ley 1, tit. 12, lib. 10 de la Nov. Recopilación, se prohibe a los albaceas comprar bienes de la testamentaría *que administren;* ". . . (Bastardillas nuestras). La citada ley de la Nov. Recopilación usa también la palabra "administrar" en relación con la función del albacea. Y si examinamos el art. 586 a la luz de otros del Código de Enjuiciamiento Civil que tratan de la misma materia, veremos que el legislador estuvo justificado al usar la palabra "administración". El albacea, de acuerdo con el Código de Enjuiciamiento Civil, no es un mero custodio de la herencia. El art. 593, por ejemplo, le impone la obligación de pagar las deudas legítimas del finado con intervención de los herederos, o en su defecto, de la corte de distrito. El 587 le impone el deber de recibir las cantidades pertenecientes al caudal y le exige la presentación de cuentas trimestrales de las cantidades recibidas y desembolsadas por él. El art. 588 prescribe que el albacea, cuando haya terminado la liquidación de los bienes, o cuando por cualquier causa cesare en el desempeño de su cargo, deberá presentar a la corte una cuenta final jurada acompañada de los recibos y resguardos correspondientes. Finalmente, el art. 590 dispone que la corte de distrito dictará auto definitivo aprobando la cuenta o haciendo modificaciones. ¿Puede acaso negarse que estas funciones del albacea no constituyen actos de administración?

En el caso de *Mercado* v. *Corte,* 62 D.P.R. 368, no se resolvió este punto. La cuestión allí adjudicada fué que la herencia de este caso no se hallaba en administración judicial, pues en ningún momento se había nombrado un administrador judicial ni el testador en su testamento confirió al albacea facultades de administración; que Mario Mercado Riera era un albacea y que no habiéndole fijado plazo el testador, su cargo terminaba al expirar el año desde su aceptación (art. 826 del Código Civil); que si bien el testador amplió el plazo legal, como no señaló expresamente el plazo de la prórroga, ésta se entenderá que fué por un año (art. 827 del Código Civil; que habiendo transcurrido ya más de dos años desde que se aceptó el albaceazgo, éste había terminado y consecuentemente, el ex albacea venía obligado a entregar la herencia a los herederos para éstos dar cumplimiento a lo ordenado por el testador en todo lo que no hubiera hecho el albacea. Es verdad que en *Mercado* v. *Corte,* supra, citando casos anteriores se dijo que el albacea no tenía otras facultades que las determinadas en los artículos 823 y 824 del Código Civil. Pero esa manifestación ignora por completo los preceptos del Código de Enjuiciamiento Civil que, como hemos visto, amplían las facultades que a los albaceas confiere el Código Civil. También se dijo en *Mercado* v. *Corte,* supra, que en ausencia de un nuevo estatuto no puede sostenerse que las disposiciones positivas de nuestro Código Civil sobre el nombramiento y deberes del albacea y el término del albaceazgo, puedan considerarse variadas o modificadas en cuanto a su alcance como derecho sustantivo por las disposiciones procesales de la Ley Referente a Procedimientos Legales Especiales. A este efecto conviene tener en cuenta lo dispuesto en el art. 619 del Código de Enjuiciamiento Civil (85 de la Ley de Procedimientos Legales Especiales) que dice así:

"Esta Ley empezará a regir desde su aprobación, *quedando derogadas todas las leyes anteriores que la contradigan;* pero seguirán vigentes los procedimientos especiales establecidos en el Código Civil,

en la Ley Hipotecaria y su Reglamento, y en cualquiera otra ley, en cuanto no esté previsto por la presente." (Bastardillas nuestras.)

No conocemos precepto constitucional alguno que impida a la legislatura ampliar o variar en una ley de procedimientos las disposiciones contenidas sobre la misma materia en el Código Civil, ni existe razón legal alguna que impida derogar un precepto del Código Civil por otro posterior de una ley procesal. Habiéndose aprobado el art. 586 del Código de Enjuiciamiento Civil con posterioridad al art. 882 del Código Civil Revisado, éste último artículo quedó parcialmente derogado en cuanto prescribe que el albaceazgo es gratuito. Y como el testador nada dispuso respecto a la remuneración del albacea, éste tiene derecho a la retribución prescrita por el art. 586 del Código de Enjuiciamiento Civil.

Finalmente arguyen "los opositores" que el albacea no tiene derecho a compensación cuando media negligencia de su parte en el desempeño de su cargo.

No hemos encontrado en nuestros estatutos ninguna disposición legal que imponga esa penalidad al albacea que sea negligente en la custodia y manejo del caudal. Por el contrario, la Corte Suprema de California repetidamente ha resuelto que si bien el albacea o administrador es responsable de las pérdidas que haya sufrido el caudal hereditario por su culpa o negligencia o por haber disipado o mal administrado o por haberse apropiado para su beneficio fondos del caudal, en ninguna parte se provee que tal conducta por parte del administrador o albacea le priva de la compensación provista por la ley; que en tales casos se cargará al administrador o albacea la pérdida y se deducirá de su compensación, de modo que hasta donde fuere necesario, su compensación será aplicada al pago de las pérdidas. *In re Roberts' Estate,* 162 P.2d 461 (Cal. 1945); *In re Sayers' Estate,* 265 P. 924 (Cal. 1928) e *In re Carvers' Estate,* 55 Pac. 770 (Cal. 1898).

Por lo expuesto debe denegarse la reconsideración de aquella parte de nuestra sentencia que concedió compensación al albacea.

## II

Don Mario Mercado Montalvo dejó en su testamento varios legados por $10,000 cada uno a los hijos de su hija María Luisa Mercado de Belaval, a los de su hijo Mario Mercado Riera y a los hijos de su nieto Pastor Mercado Mandry. Dispuso que estos legados devengarían intereses al 7 por ciento anual una vez transcurridos 90 días del fallecimiento del testador; y que debería pagarse la cuarta parte de cada uno de ellos del dinero efectivo que tuviese en los bancos y el resto dentro del término de cuatro años, a razón de una cuarta parte por año. En relación con el pago de dichos legados dispuso además:

"Designo a don Mario Mercado Riera *tutor* de todas las personas a quien anteriormente les he dejado legado y que se encuentran comprendidas entre aquellas sometidas a tutela *y a los solos efectos de la administración de dichos legados.*" (Bastardillas nuestras).

Después de muerto el testador nació su nieto Adrián V. Mercado Jiménez. Como el testador no dejó a éste legado alguno, pactaron los cuatro herederos en el contrato particional que celebraron, que se le asignase en el inventario una donación de $10,000 con cargo al caudal hereditario, sujeto a las mismas condiciones a que se hallaban afectos los legados hechos a nietos y biznietos en el testamento. En las cuentas finales del albacea, bajo el título "pagos hechos de los plazos vencidos e intereses a legatarios," se consignó la siguiente partida: "A Adrián V. Mercado Jiménez, $3,550". Esta cantidad aparecía pagada a Mario Mercado Riera por el primer plazo e intereses sobre los $10,000 objeto de la donación. Solicitaron "los opositores" en la corte inferior que el ex albacea entregase esta cantidad al padre con patria potestad sobre el menor. La corte *a quo* rehusó resolver la cuestión por entender que no procedía considerarla dentro de un procedimiento de aprobación de las cuentas finales del albacea. Este Tribunal en apelación la resolvió en contra de "los opositores". Habiendo éstos solicitado reconsidera-

ción y oídas las partes, procederemos a determinar si fué o no errónea nuestra decisión.

Alegan "los opositores" que es contraria a la ley la disposición testamentaria que designa a Mario Mercado Riera tutor de los menores nietos y biznietos del testador a los solos efectos de la administración de los legados de $10,000. En apoyo de esta tesis arguyen que la patria potestad excluye la tutela y que donde existe la primera no puede existir válidamente la segunda, e invocan el caso de *Concepción* v. *Latoni,* 51 D.P.R. 564.

Partiendo de la premisa de que la condición impuesta en el testamento en relación con el nombramiento de tutor para los nietos y biznietos es nula e inexistente, sostienen "los opositores" que es también nula la condición impuesta en el contrato particional a virtud del cual se confiere a Mario Mercado Riera la administración de lo donado a Adrián V. Mercado Jiménez. En su consecuencia demandan que el pago de los $3,550 debe hacerse a Adrián Mercado Riera, padre con patria potestad sobre el menor.

Si fuéramos a resolver la controversia por el Código Civil Español que imperó en esta jurisdicción hasta que fué aprobado el Código Civil Revisado en 1902, quizás podríamos convenir con "los opositores" en que la condición en controversia es contraria a la ley. Dispone el Código Civil Español en su art. 206:

"El padre puede nombrar tutor . . . para sus hijos menores y para los mayores incapacitados . . .

"Igual facultad corresponde a la madre; . . . .

"*En todo caso será preciso que la persona a quien se nombre tutor . . . . no se halle sometida a la potestad de otro.*" (Bastardillas nuestras.)

Y el 207 prescribe:

"También puede nombrar tutor a los menores o incapacitados el que les deje herencia o legado de importancia. El nombramiento, sin embargo, no surtirá efecto hasta que el Consejo de familia haya resuelto aceptar la herencia o el legado."

Interpretando el art. 207 a la luz del último párrafo del 206 dispositivo de que "en todo caso será preciso que la persona a quien se nombre tutor no se halle sometida a la potestad de otro," sostienen los comentaristas del Código Civil Español que el nombramiento de tutor para la administración de la herencia o legado de importancia a que se refiere el art. 207 antes transcrito, no procede cuando el menor (o incapacitado) tenga padre o madre con patria potestad. 2 De Diego, *Institución de Derecho Civil Español,* pág. 604; 2 Scaevola, *Código Civil,* pág. 181 y 4 Valverde, *Tratado de Derecho Civil Español,* pág. 552. Si bien Manresa a virtud del último párrafo del art. 206 del Código Civil Español opina que no puede nombrarse tutor cuando existe padre o madre con patria potestad, adoptando una interpretación ecléctica no encuentra obstáculo legal alguno que impida encargar a una tercera persona la administración de los bienes legados e invoca la resolución de la Dirección General de los Registros de 13 de abril de 1892 (tomo 5, pág. 67). 2 Manresa, *Comentarios al Código Civil Español,* (tercera edición 1907, pág. 193).

Pero el Código Civil Revisado no adoptó íntegramente los artículos 206 y 207 del Español. Estos artículos corresponden con las variantes aludidas, a los números 244 y 245 del Revisado, que figuran bajo el 174 y el 175 del Código Civil ed. 1930. Disponen estos dos artículos:

"Artículo 174.—El padre o la madre pueden nombrar tutor en su testamento para sus hijos menores y para los mayores incapacitados."

"Artículo 175.—También el que les deje herencia o legado de importancia a los menores o incapacitados, puede nombrarles tutor para la administración de dichos bienes. El nombramiento, sin embargo, no surtirá efecto hasta que la herencia o el legado haya sido aceptado por el padre, la madre o el tutor del menor, con la aprobación de la corte de distrito competente."

Se observará que el art. 174 no contiene el último párrafo del 206 del Código Español a que antes hemos hecho referencia. Y como para hacer más clara la posición adop-

tada por el Código Civil de Puerto Rico en el art. 175 se dispuso: "El nombramiento [de tutor] sin embargo, no surtirá efecto hasta que la herencia o el legado *haya sido aceptado por el padre, la madre o el tutor* . . .". (Bastardillas nuestras.) Es evidente que si la herencia o el legado debe ser aceptado por el padre y en su caso por la madre para que el nombramiento de tutor surta efecto, la existencia de la patria potestad no excluye el nombramiento del tutor a que se contrae el art. 175 del Código Civil.

Cúmplenos ahora considerar el caso de *Concepción* v. *Latoni,* supra, en el cual ponen gran énfasis los ilustrados abogados de "los opositores". En aquel caso el padre de tres hijos naturales menores de edad los instituyó por sus únicos y universales herederos y dispuso en su testamento:

" 'En uso del derecho que le concede la ley elige y nombra tutor de sus menores hijos Joaquín, Carmen y Alberto, a su amigo don Manuel García Lago, mayor de edad, soltero, comerciante y vecino de esta ciudad, con relevación de fianza, confiriéndole las facultades en derecho necesarias; y si bien por ministerio de la ley, la madre natural de sus menores hijos, la citada Modesta Concepción y Cosme, tiene la patria potestad sobre dichos menores, velando por el bienestar y la educación de mis hijos, he creído conveniente el nombramiento de tutor que acabo de hacer, por las razones de que dicha madre hace mucho tiempo que no vive con sus hijos, a los cuales ha abandonado, y por ser una mujer muy ignorante que de asumir la administración de los bienes que dejo a mis hijos, estarían éstos expuestos a sufrir privaciones y a presenciar malos ejemplos' ".

La madre con patria potestad impugnó la disposición testamentaria que designó tutor para sus hijos y la privó de la patria potestad. La corte de distrito resolvió que consistiendo la legítima de los hijos naturales en aquel caso en una tercera parte de la herencia, dichos menores tenían carácter de herederos forzosos en cuanto a una tercera parte y de voluntarios en cuanto a las dos terceras partes restantes de libre disposición. Y considerando la herencia de las dos terceras partes de libre disposición como una herencia de im-

portancia, la corte de distrito llegó a la conclusión, con arreglo al art. 175 del Código Civil, de que el nombramiento de tutor debería entenderse limitado a la administración de dos tercios de la herencia, reteniendo la madre natural la patria potestad y la administración del tercio de herencia forzosa.

Este Tribunal revocó la decisión de la corte de distrito. La revocación está predicada en el art. 174 y otros del Código Civil que tratan sobre distintos aspectos de la patria potestad. Si bien se tuvo en cuenta que el último párrafo del art. 206 del Código Civil Español no se había adoptado en el 174 del nuestro, se hizo completa abstracción del art. 175 de nuestro Código Civil que ya hemos analizado. Es incuestionable que el padre en el caso de *Concepción* v. *Latoni*, supra, no podía imponer condición alguna a la legítima, es decir, al tercio de que consistía la herencia forzosa. Pero no es menos cierto que en cuanto a la herencia voluntaria —las dos terceras partes de libre disposición—podía imponer las que tuviese por conveniente, siempre que no fueran contrarias a la ley, a la moral o al orden público. Y si el que deja herencia o legado de importancia a un menor o incapacitado puede nombrarles tutor para la administración de dichos bienes, ¿por qué razón legal ha de prohibirse al padre o a la madre que haga lo mismo que el extraño cuando la herencia o el legado no está comprendido en la legítima que corresponde al menor o incapacitado? La corte de distrito, sin duda interpretó correctamente y cumplió hasta donde fué legalmente posible la voluntad del testador sin menoscabar los derechos de la madre natural, quien conservó la guarda y custodia de los menores y la administración y usufructo de los bienes que constituían la herencia forzosa. A nuestro juicio la corte de distrito actuó con arreglo a derecho y fué errónea la revocación por parte de este Tribunal. Consecuentemente, el caso de *Concepción* v. *Latoni*, supra, debe entenderse revocado en cuanto al punto que nos ocupa.

 Arguyen además "los opositores" que no consta que la tutela que se defirió a Mario Mercado Riera se haya inscrito en el Registro de Tutelas y consecuentemente no puede ser tutor por prohibición expresa del art. 195 del Código Civil que en lo pertinente prescribe:

"No pueden ser tutores:
" * * * * * * *

"10. El tutor testamentario que descuidare o abandonare el cumplimiento de los requisitos que son indispensables para empezar el ejercicio de la tutela."

El hecho de que la tutela deferida a Mario Mercado en el testamento de su padre no haya sido inscrita en el Registro de Tutelas, quizás podría tener alguna pertinencia en un procedimiento seguido para privar a dicho tutor de la administración de los legados hechos a los nietos y biznietos del testador. Pero esa cuestión no está ahora ante nos y consecuentemente no expresaremos opinión alguna sobre ella. Pero la circunstancia de que el tutor no haya cumplido con los requisitos para empezar el ejercicio de la tutela, no implica que la disposición testamentaria por la cual se le defirió el cargo para la sola administración de los legados, sea contraria a la ley, a la moral o al orden público. No puede ser contraria a la ley, a la moral ni al orden público porque, como hemos visto, lo autoriza el art. 175 del Código Civil. Por las mismas razones no puede alegarse con éxito que la condición del contrato particional que confirió a Mario Mercado Riera la administración del legado del menor Adrián V. Mercado Jiménez(⁴) sea ilegal e inexistente.

 Siendo válida la condición impuesta por todos los herederos entre los cuales se halla Mario Mercado Riera, al efecto de que la cantidad donada al menor en cuestión sea

---

(⁴) Es pertinente tener en cuenta que en el contrato particional no se defirió tutela alguna. Sólo se defirió el cometido de administrar los legados, pues de conformidad con el art. 172 del Código Civil, la tutela se difiere: 1, por testamento; 2, por la ley; y 3, por tribunal competente. Claro es que por contrato no puede nombrarse tutor.

administrada por el ex albacea, los herederos todos están obligados al cumplimiento de lo pactado y sólo pueden dejarlo sin efecto mediante el consentimiento de todos los contratantes.

*Procede, por lo expuesto, denegar la reconsideración y restablecer, desde esta fecha, la sentencia que fué dejada sin efecto a virtud de la moción de reconsideración.*