MARCELINO ANDINO FLORES Y CÁNDIDO ANDINO, demandantes, recurridos y recurrentes, *v.* ANTONIA ANDINO FLORES, CARMEN ANDINO FLORES y DORIS CORREA ANDINO, demandadas, recurrentes y recurridas.

Número 12266.
Reasignado: 21 de junio de 1961. Resuelto: 29 de junio de 1961.

*Juan Figueroa Rivera* y *José N. Moreno,* abogados de las demandadas, recurrentes y recurridas; *Enrique Igaravidez, Virgilio Brunet* y *Luis Miranda Correa,* abogados de los demandantes, recurridos y recurrentes.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Estamos conformes con la ilustrada Sala sentenciadora que la prueba en este caso no sostiene la pretensión de los demandantes que el testador en virtud de "la vejez con involución mental" no estaba en su cabal juicio al momento de testar V-I Puig Peña—Tratado de Derecho Civil Español 102 (edición de la Editorial Revista de Derecho Privado de 1954); ni que el testador prácticamente estuvo secuestrado en poder de las demandadas durante un tiempo coetáneo al otorgamiento del testamento. Por el contrario, la prueba demuestra que las demandadas le ofrecieron al demandante señor Marcelino Andino que se llevara al testador a su casa para que no se quedara solo en casa de las demandadas cuando éstas tenían que salir (t. 95). La otra razón de nulidad de que el testamento no fue otorgado en un solo acto, no se probó ninguna interrupción en el proceso testamentario final que nos obligara a pasar sobre este extremo— *Cintrón* v. *Cintrón,* 70 D.P.R. 770 (De Jesús) (1950), cita precisa a las págs. 775–776—y en cuanto a que el notario no da fe por su propio conocimiento y de manera firme y

definitiva de que el testador estuviera capacitado para otorgar el testamento, la escritura de testamento es clara en cuanto a la capacitación al afirmar el notario que el compareciente tiene "a mi juicio y el de los testigos, la capacidad legal necesaria para testar" (t. 134). Sobre la suficiencia del juicio de capacidad del Notario y los testigos véase Puig Peña, obra citada págs. 114–115. El cumplimiento con las disposiciones del Código Civil vigente en Puerto Rico es un requisito formal que puede establecerse mediante el examen del documento.

En lo que no tiene razón la ilustrada Sala sentenciadora es en su conclusión de derecho que por no haber la heredera señora Antonia Andino Flores obtenido las cartas de albaceazgo de acuerdo con el art. 597 del Código de Enjuiciamiento Civil de Puerto Rico, 32 L.P.R.A. 327, sección 2571, debe entenderse que no aceptó la encomienda del testador de actuar como albacea y por disposición del art. 822 de nuestro Código Civil perdió su derecho a la mejora y a participar con los otros herederos en la mitad del tercio de libre disposición. La prueba es clara que después de la muerte del testador, su hija Antonia continuó administrando los bienes del finado en la misma forma que lo había hecho durante la vida del testador. Como no hubo renuncia expresa dentro del término hábil de seis días, el albaceazgo debe considerarse como tácitamente aceptado de acuerdo con el art. 820 de nuestro Código Civil.

El caso de *Mercado* v. *Mercado*, 66 D.P.R. 811 (en reconsideración) (De Jesús), (1947), cita precisa a la pág. 811 en que se funda la ilustrada Sala sentenciadora para declarar incompatible el art. 820 del Código Civil con el art. 597 del Código de Enjuiciamiento Civil nuestro, es distinguible. El art. 830 del Código Civil de Puerto Rico declara el albaceazgo cargo gratuito y el art. 586 del Código de Enjuiciamiento Civil nuestro lo declara remunerado, además de ampliar las funciones del albaceazgo. En el caso de

*Mercado*, en cuanto al extremo de la remuneración, resolvió este Tribunal que debía prevalecer el art. 586 del Código de Enjuiciamiento Civil por ser la legislación última. Pero en este caso, las disposiciones del art. 597 del Código de Enjuiciamiento Civil de Puerto Rico, que se refiere a la obtención de las cartas de albaceazgo, no está en conflicto ni resulta incompatible con las disposiciones del art. 820 de nuestro Código Civil, que se refiere a las formas como puede aceptarse el albaceazgo. El primero se aplica a los casos de aceptación expresa, cuando la extensión del caudal testamentario y las complejidades del negocio jurídico obligan al albacea a obtener una legitimación del tribunal competente de sus poderes para actuar. El segundo se aplica a los casos de aceptación tácita, como el aquí expuesto. La regla de hermenéutica, más confiable, es aquella que permite armonizar las contrariedades entre dos estatutos para fijar el verdadero alcance de cada uno.

*Debe confirmarse la sentencia en cuanto a la revisión solicitada por los demandantes recurrentes y recurridos y revocarse en cuanto a la revisión solicitada por las demandadas recurrentes y recurridas.*