Oscar Rivera Torres, Enrique Rivera Torres, etc., peticionarios y recurrentes, *v.* Tribunal Superior, Sala de Caguas; Lcdo. Rafael Lizardi Rivera, Administrador, demandado y recurrido.

*Número:* RE-89-523 *Resuelto:* 29 de junio de 1990

*Nydia María Díaz Buxó*, abogada de Pedro Rivera Torres, recurrente; *Rafael Lizardi Rivera, pro se*, recurrido.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

En el presente caso exploramos por primera vez el verdadero alcance y espíritu del Art. 586 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2491, en situaciones en que en un administrador judicial convergen varios atributos profesionales y, en virtud de los mismos, realiza el inventario y avalúo de los bienes hereditarios y otras gestiones que de ordinario requieren la contratación de abogados, contadores y especialistas en otras materias.

I

La cuestión la suscita el Dr. Pedro Rivera Torres, miembro de las Sucesiones de Pedro Rivera Rivera y Francisca Torres Rivera. Cuestiona el dictamen del Tribunal Superior, Sala de Caguas, fechado el 21 de agosto de 1989, que fijó los honorarios del administrador judicial, Lcdo. Rafael Lizardi Rivera, a razón de $100 la hora.

En su mostración de causa, Lizardi Rivera señala que su designación el 28 de diciembre de 1984 no fue la de un simple administrador judicial —según dispuesto por el Art. 586 del Código de Enjuiciamiento Civil, *supra*, sino una de carácter *sui generis*. Alude a sus cualificaciones como abogado y contador con maestría. Bajo ese enfoque nos informa sobre las complejidades confrontadas en el desempeño del cargo, así como de las tareas legales y de contabilidad realizadas, tales como: análisis de expedientes y documentos, ventas de inmuebles en pública subasta, pagos de honorarios, trámites relativos a la preparación del cuaderno particional y otros. En esas gestiones no contrató los servicios de otros abogados o contables, sino que dependió exclusivamente de sus investigaciones y propios conocimientos. En resumen, expone que actuó como albacea, contador, asesor contributivo, corredor de bienes raíces, contador-partidor, comisionado judicial, asesor financiero y administrador.

Finalmente, en apoyo de su posición, nos remite a los términos de la resolución del tribunal de instancia —enmendada el 2 de

noviembre— posterior a nuestra intervención. En esta última, dicho foro consignó las dificultades que presentó el caso debido a la existencia de serias diferencias entre los herederos. Expuso, además, que originalmente designó administrador judicial al coheredero doctor Rivera Torres; que ello generó más problemas, y que eventualmente, *sua sponte*, nombró al licenciado Lizardi Rivera para que actuara como administrador, lo que facilitó la eventual solución de las controversias. Esa designación la efectuó como comisionado especial bajo la Regla 41 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

En consideración a esa realidad procesal, el tribunal de instancia expresó:

> Hemos hecho un análisis de todas las encomiendas que llevó a cabo el Lic. Rafael I. Lizardi Rivera por órdenes del Tribunal y en conjunto entendemos que es justo y razonable que se compense por los servicios profesionales prestados a la entera satisfacción del Tribunal y para beneficio de los herederos de la Sucesión Rivera Torres. De haber tenido el Tribunal que buscar varios especialistas para atender este caso, todavía estaría la controversia pendiente en nuestro calendario y a un costo mucho mayor para el caudal hereditario. La lucha interna entre los herederos era de tal magnitud que en un momento dado se llegó a pensar que el caudal iba a disminuir sustancialmente por los honorarios de todos los Abogados, Administradores y Peritos que iban a tener que intervenir en el caso. En vez [de] $150 solicitados por hora se fijan los honorarios en $100 en vista del gran cúmulo de horas, la complejidad del asunto y la naturaleza técnica y especializada que requirió un profesional experto en esta área del conocimiento. Apéndice 18 a Contestación a orden para mostrar causa, pág. 98.

Mediante oportuna réplica, el peticionario Rivera Torres reafirma su señalamiento de que los honorarios de Lizardi Rivera deben limitarse al por ciento prescrito por ley.

II

En *Ab Intestato Balzac Vélez*, 109 D.P.R. 670, 681 (1980), dijimos "que el legislador, como regla general, tuvo en mente la designación de un solo administrador, pensando que ello

traería menos problemas ante la dinámica humana de que habiendo más de uno, tendrían necesariamente que ponerse de acuerdo, lo cual en lugar de aligerar, muy probablemente complicaría y retrasaría los procedimientos". A ese pronunciamiento hoy añadimos que nuestro ordenamiento vigente no impide que el nombramiento de un administrador judicial recaiga sobre un profesional del derecho, poseedor de otras cualificaciones. Ese enfoque, cuyo pragmatismo es incuestionable, fue el seguido por el tribunal de instancia y merece ser refrendado. Los autos ante nos corroboran la sabiduría de esa decisión.

Es evidente que los trámites judiciales y extrajudiciales para liquidar ambas sucesiones fueron complejos, y que en la persona del licenciado Lizardi Rivera se combinaron dos conocimientos que le capacitaron idealmente para la culminación satisfactoria de esa gestión: abogado y contador. Sin embargo, esa especial capacitación no alteró el hecho básico de que su nombramiento fue de administrador judicial y no, como sugiere, de comisionado especial. Aunque en algunas zonas pueden ser afines, es obvio que las funciones que corresponden a un comisionado especial bajo la Regla 41 de Procedimiento Civil, *supra*, son distintas a la de un administrador judicial.

■ Aclarado este extremo, como punto de partida, notamos que sus honorarios como administrador se rigen por el Art. 586 del Código de Enjuiciamiento Civil, *supra*, el cual dispone:

> Todo administrador o albacea, *a no disponer otra cosa el testamento bajo el cual se le nombra*, tendrá derecho a percibir del caudal, en remuneración de sus servicios, el cinco por ciento de los ingresos *que ocurran durante la administración*, montantes a la cantidad máxima de mil (1,000) dólares; el dos y medio (2½) por ciento cuando éstos asciendan hasta diez mil (10,000) dólares, y el uno (1) por ciento sobre las cantidades que excediesen de diez mil (10,000) dólares. *También dispondrá el* juez que se abonen al administrador o albacea los *gastos indispensables que ocasione* la administración, incluso el costo de los anuncios, publicaciones que la ley prescriba, la conservación guarda de los bienes, *consulta de abogado* y gastos de viaje. (Énfasis suplido.) 32 L.P.R.A. sec. 2491.

■ Como puede apreciarse, este texto dispone que en ausencia de disposición testamentaria que conceda mayor compensación, la remuneración de un *administrador judicial* está limitada a lo fijado por ley. La fórmula inicial —más bien de carácter automático— requiere que se compute en proporción a los ingresos percibidos durante la administración. Así, en *Boerman, Ex parte*, 52 D.P.R. 627, 630 (1938), ante una administración que caracterizamos de *no* "extremadamente complicada o difícil", indicamos que no procedía compensación adicional. Notamos, sin embargo, que el Art. 586 del Código de Enjuiciamiento Civil, *supra*, también autoriza al Tribunal —con carácter de *numerus apertus*— a compensar otros *gastos indispensables*, entre ellos anuncios, publicaciones, conservación, consultas de *abogado* y gastos de viaje. Véase E. González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ramallo Bros. Printing, 1983, pág. 214.

■ En *Mercado v. Mercado*, 66 D.P.R. 811, 812–813 (1947), resolvimos que el Art. 586 antes transcrito fue copiado, con ligeras variantes, del Art. 1618 del Código de Enjuiciamiento Civil de *California*. Como resultado, debido a que las funciones del albacea conllevan actos de administración, se declaró dicho cargo *remunerado*, con una compensación igual a la concedida *a todo administrador judicial*. *Andino v. Andino*, 83 D.P.R. 138, 140 (1961).

■ La nota *común* sobresaliente entre un albacea y un administrador es precisamente *la administración de la herencia*. Esa característica mutua permite el análisis de la cuestión bajo la vertiente doctrinaria del albaceazgo. A tal efecto, es unánime la glosa en el reconocimiento de la grave responsabilidad y carga que genera tal función. Por esa razón se ha dicho que es "*justo* que el administrador tenga establecida en su favor una *cierta compensación* o protección, un cierto remedio, aunque sea de tipo económico, que le anime en la lucha contra las dificultades con que puede encontrarse. La maledicencia se ceba, puede afirmarse, cuando el público no ve desempeñado el cargo con aquella

actividad, pulcritud y celo propios de un buen padre de familia; *la causa de ello es casi siempre la falta de estímulo de unos emolumentos adecuados. La retribución del administrador obra así en el interés mismo de una fiel gestión, y ni el legislador ni los jueces pueden permanecer indiferentes a ciertas medidas y prácticas establecidas con la finalidad de su compensación económica. Hasta la remuneración podría, pues, concebirse destinada a excitar el celo del administrador, y, en cuanto a tal, el juez podría decretarla como providencia necesaria a la conservación del patrimonio hereditario*". (Énfasis suplido y escolios omitidos.) M. Gitrama, *La administración de la herencia en el Derecho español*, Madrid, Ed. Rev. Der. Privado, 1950, págs. 201–202.

▆ A esa visión responde el derecho del administrador judicial a percibir, en concepto de una retribución automática, un por ciento computable a base de la cuantía de los ingresos habidos durante la administración. Sin embargo, dentro del espíritu y literalidad del Art. 586 del Código de Enjuiciamiento Civil, *supra* —que reconoce que se compensen otros gastos— procede que adicionalmente sea acreedor a una retribución más elevada fundada en el tiempo consagrado a la administración y también a percibir honorarios razonables por las labores propias realizadas en calidad de *facultativo.*[1]

---

[1] Una situación similar observamos en lo relativo a la retribución del notario. Aunque se utiliza un sistema de arancel o tarifa, en algunas ocasiones son acreedores a honorarios no arancelarios cuando se "justifican ciertas gestiones previas y preparatorias, e inclusive posteriores, tales como estudios de antecedentes, título, consultas, dictámenes, preparar minutas y mandatos retribuidos en que el notario presta un servicio adicional como jurista, actividad no reglada ni contemplada por el legislador en el arancel. 'El Notario, por su calidad de jurista, puede desempeñar su actividad de tal, tanto independiente de todo instrumento (consultas, dictámenes, etc.) como previa y preparatoria de un instrumento. En el primer supuesto podrá percibir sus honorarios como otro jurista cualquiera y sin sujeción al Arancel Notarial. En el segundo supuesto, si su actividad como jurista cristaliza documentalmente antes del instrumento, pudiendo así destacarse de su actividad "funcionarista" (cuaderno particional, estatutos de sociedades, minutas de escrituras . . .) no cabe duda que podrá también percibir honorarios extra-arancelarios como profesional del Derecho . . . .' Ávila Álvarez, *op. cit.*, págs. 20–21. En esas situaciones existe libertad para pactar honorarios, claro está, guiado ese libre albedrío por la costumbre y los criterios de razonabilidad aplicables y pertinentes plasmados en el

 ¿Qué incluye este último concepto? "[S]e trata ni más ni menos que de aquellos trabajos cuya renumeración es socialmente calificada de 'honorarios'. Y tales trabajos devengan aquellos, no ya cuando le surjan al albacea, diríamos, ocasionalmente, sino como afirma SÁNCHEZ ROMÁN 'aunque estén comprendidos en el encargo de su nombramiento de albacea'. *Son trabajos 'profesionales en concepto, por ejemplo, de abogado, notario, arquitecto, agrimensor o perito en todas aquellas gestiones y prácticas o servicios que se refieran a su título profesional,* aunque estén comprendidos en el encargo de su nombramiento de albacea, tales como la tasación de fincas, objetos o valores de la testamentaría, la formación del cuaderno particional de la misma, la protocolación [sic] de la partición de la herencia u otras semejantes, que de no haberse hecho por el albacea con su aptitud pericial, habrían de ser realizados por otros peritos . . . .' Así que lo que no devenga honorarios es el trabajo de ejecución del testamento que no necesitando conocimientos facultativos o profesionales puede ser realizado, en principio, por cualquiera, y entonces no caben honorarios, porque tal actividad no da derecho a ellos, y si el testador o la ley estiman oportuna retribución, ellos la marcarán." (Escolios omitidos y énfasis suplido.) M. Albaladejo García, *Comentarios al Código Civil y compilaciones forales*, Jaén, Ed. Rev. Der. Privado, 1979, T. XII, Vol. 2, págs. 274–275; Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, T. VI, pág. 608.(²)

---

Canon 24 del Código de Ética Profesional. Todo 'trabajo distinto de la redacción u otorgamiento de la escritura . . . debe ser pagado independientemente de lo fijado por el arancel para la escritura'. *Largé & Acevedo v. Fernández*, supra, pág. 513." *In re Feliciano*, 115 D.P.R. 172, 179–180 (1984). Véase, además: P. Malavet Vega, *Manual de Derecho Notarial Puertorriqueño*, Santo Domingo, Ed. Corripio, 1988, págs. 155–160.

(²) Bajo ese prisma, hace décadas el Tribunal Supremo de España, en su Sentencia de 8 de febrero de 1940, Núm. 94, T. VII, Repertorio de Jurisprudencia, pág. 62 (Aranzadi) reconoció que "cuando el contador es un Notario tiene derecho a percibir honorarios por la redacción del cuaderno particional, aparte de los que, según arancel, le correspondan por la protocolización de las operaciones divisorias . . .".

## III

Esta normativa derrota el señalamiento del peticionario doctor Rivera Torres en cuanto a su pretención de limitar los honorarios del administrador Lizardi Rivera exclusivamente al por ciento prescrito por el Art. 586 del Código de Enjuiciamiento Civil, *supra.*

Según antes indicado, éste es acreeedor a una compensación adicional por sus labores duales de facultativo (abogado-contable). Al respecto, el tribunal de instancia los valoró a razón de $100 la hora. Para ello utilizó la voluminosa y detallada relación de tiempo y tareas (desde 1985 hasta el 18 de octubre de 1989) que, a modo de factura, Lizardi Rivera unió a su moción. Su examen corrobora el tiempo invertido y la veracidad de sus gestiones profesionales. Coincidimos, pues, con el foro de instancia en la valoración de $100 por hora. Al fijar los honorarios no sólo debe estimarse el tiempo y trabajo requerido, sino su naturaleza y grado de dificultad. Ciertamente algunas de las gestiones realizadas por Lizardi Rivera —tales como llamadas telefónicas, entrevistas, lectura de documentos, visitas a bancos y otras instituciones, etc.— fueron de índole rutinarias, pues no exhiben ninguna dificultad que requiera conocimientos o destrezas especializadas.[3] Sin embargo, otras fueron más delicadas y de mayor reto intelectual. Es acreedor también al porcentaje inicial fijado en la ley. De la suma total resultante, deberá restarse los anticipos recibidos.

## IV

Una nota final cautelar. La experiencia indica que en muchas ocasiones la valoración de honorarios —tanto de abogados como de otros servicios profesionales— cuando no se han pactado de antemano, es motivo de enconadas controversias. Por esta razón es imperativo que en futuras designaciones de administradores judiciales se discutan y fijen los honorarios facultativos de

---

[3] El principio de razonabilidad también es utilizado por los tribunales en la concesión de costas. Véase *Andino Nieves v. A.A.A.*, 123 D.P.R. 712 (1989).

antemano y, de no ser posible en esa etapa, se establezcan los criterios a nutrir su cuantificación. En ese trámite los tribunales deben conceder amplia participación a los herederos. Es de aplicabilidad aquí la doctrina de que la fijación de honorarios debe constar libre de ambigüedades. *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989); *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R. 772, 774 (1981); *In re Díaz Lamoutte*, 106 D.P.R. 450 (1977). Por último, tampoco debe pasarse por alto que cuando el administrador judicial designado sea un abogado, la cuantía de sus honorarios debe ajustarse al espíritu y letra del Canon 24 de Ética Profesional, 4 L.P.R.A. Ap. IX.

Por los fundamentos expuestos, *se expedirá el auto y se dictará sentencia modificatoria.*